# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| BLUE CROSS AND BLUE SHIELD OF LOUISIANA, and HMO LOUISIANA, INC., on behalf of themselves and all others similarly situated,<br><br>             Plaintiffs<br>vs.<br><br>INSYS THERAPEUTICS, INC. and JOHN DOES 1-100,<br><br>             Defendants. | CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana ("BCBSLA") and HMO Louisiana, Inc. (collectively "Plaintiffs" or "BCBSLA"), on behalf of themselves and a proposed class of similarly situated third party payors ("TPPs"), bring this action against Insys Therapeutics, Inc. ("Insys") and John Does 1-100 and allege the following based on (a) personal knowledge as to themselves, (b) investigation of counsel, and (c) information and belief.

## I.      INTRODUCTION

1.      Subsys, a powerful opioid fentanyl spray, is both a tightly controlled and expensive prescription drug with a limited FDA-approved indication: the treatment of breakthrough cancer pain in opioid-tolerant adult cancer patients. The universe of such patients is small. But despite this narrow indication, Insys turned Subsys into a cash cow, generating revenue of hundreds of millions of dollars yearly through unnecessary and fraudulent prescriptions to thousands of patients.

2.      Insys crafted and implemented a two-tiered scheme of fraud and deceit to line its pockets. First, Insys promoted off-label use of Subsys, rewarding prescribing doctors, including John Does, with kickbacks in the form of speaker fees, administrative help, and more. Second, Insys lied to TPPs to have Subsys prescriptions covered by health insurance. Impersonating doctor office staff, Insys employees communicated with TPPs, falsified records, and defrauded TPPs into approving and paying and/or reimbursing for thousands of off-label Subsys prescriptions for patients who did not have breakthrough cancer pain.

3.      Subsys is and has been Insys's principal product for the last several years, accounting for up to 98 percent of Insys's annual net revenues. Net revenue from the drug was $8.6 million in 2012, the year Subsys first became available. A year later, net revenue jumped to $96 million. In 2015, Insys made $330 million from Subsys, a 400-fold increase from 2012.

4.      Publically, Insys attributed Subsys's revenue growth to, among other things, its "successful execution of [its] Subsys strategy," which included "increased prescriptions and change in mix of prescribed dosages"[1] and "a focused market penetration strategy."[2] That "focused market penetration strategy" involved clear fraud: persistent illegal off-label marketing, illegal kickbacks to prescribers, and a wide-ranging scheme to defraud TPPs into authorizing insurance coverage for off-label prescriptions of Subsys by misrepresenting the health conditions of the persons to whom Subsys was prescribed.

5.      Insys raked in money, almost exclusively from private and public TPPs, for prescriptions that never should have been prescribed and, if the truth were known, would not have been authorized and paid for by TPPs.

---

[1] Insys Therapeutics, Inc., Form 10-Q, May 14, 2014, p. 23.

[2] Insys Therapeutics Conference Call with Investors, November 11, 2014, https://www.sec.gov/Archives/edgar/data/1516479/000143774914020715/ex99-2.htm.

6.      Since at least 2013, Insys engaged in a fraudulent, illegal, and unfair scheme designed to unlawfully and unjustly obtain reimbursements from Plaintiffs and members of the Class for prescriptions of Subsys that are not properly reimbursable because the patients receiving the prescriptions do not have breakthrough cancer pain and/or are not tolerant to opioids.

7.      In August 2018, Insys announced a settlement in principle with the U.S. Department of Justice under which Insys would pay at least $150 million, with potentially up to $75 million more for "contingent events," to resolve claims that Insys knowingly offered and paid kickbacks to induce prescriptions of Subsys and knowingly caused Medicare and other federal health care programs to pay for off-label uses of the drug.

8.      Defendants' fraud put patients at risk by exposing them to a powerful, highly addictive narcotic, thwarted the controls TPPs put in place to ensure only medically necessary on-label prescriptions were approved, and wasted precious healthcare dollars, all to pad Insys's profits. Plaintiffs bring this class action on behalf of TPPs who purchased, paid, and/or provided reimbursement for some or all of the purchase price of the prescription opioid Subsys and were defrauded into spending hundreds of millions of dollars for off-label prescriptions of the drug.

## II.      PARTIES

**A.      Plaintiffs**

9.      Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana ("BCBSLA") is a not-for-profit mutual insurance company organized and existing under the laws of the state of Louisiana. BCBSLA provides and manages health benefits to more than 1 million people primarily in the state of Louisiana and throughout the United States. BCBSLA also provides third-party administrative (TPA) services for members of self-

funded employee health plans. BCBSLA has paid all or part of the cost of its participants' purchases of Subsys in multiple states during the Class Period, as defined herein.

10.     HMO Louisiana, Inc. ("HMOLA") is a domestic health maintenance organization licensed to conduct business in the state of Louisiana. HMOLA is a wholly owned subsidiary of Louisiana Health Service & Indemnity Company. HMOLA provides and manages health benefits to participants, members, and beneficiaries primarily in the state of Louisiana and throughout the United States. HMOLA also provides third-party administrative (TPA) services for members of self-funded employee health plans. HMOLA has paid all or part of the cost of its participants' purchases of Subsys during the Class Period, as defined herein.

**B.     Defendants**

11.     Insys Therapeutics, Inc. is a Delaware corporation with headquarters located at 1333 South Spectrum Boulevard, Suite 100, Chandler, Arizona. Insys represents that it is a commercial-stage specialty pharmaceutical company that develops and commercializes supportive care products primarily designed to assist patients with pain management attributable to their disease, treatments, or therapies. Insys manufactures and sells Subsys, a fentanyl sublingual spray, approved by the Food and Drug Administration ("FDA") for treatment of breakthrough pain in cancer patients who are already receiving and tolerant to opioids for the management of chronic pain.

12.     Upon information and belief, Defendants John Does 1-100 are individual health care professionals who received kickbacks from Insys and/or facilitated payment by a TPP for one or more off-label prescriptions of Subsys in violation of the TPP's policies and whose names and addresses of residence are unknown.

## III.    JURISDICTION AND VENUE

13.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because

Plaintiffs' claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18

U.S.C. § 1961, *et seq*., raise a federal question.

14.    This Court also has jurisdiction over this matter under 28 U.S.C. § 1332(d)

because this action is a class action in which the aggregate amount in controversy for the

proposed class exceeds $5,000,000, and at least one member of the putative class is a citizen of a

state different from that of one of the Defendants. This Court has supplemental jurisdiction over

the remaining state law claims pursuant to 28 U.S.C. § 1367.

15.    Venue is appropriate in this District under 28 U.S.C. §1391 because Insys, as a

corporation, is deemed to reside in any judicial district in which it is subject to personal

jurisdiction. Additionally, venue is proper in this District under 18 U.S.C. §1965 because Insys

received substantial compensation from the sales of Subsys in this District, made

misrepresentations and material omissions about Subsys in this District, and can be found, has an

agent, and/or transact its affairs in this District.

## IV.    FACTUAL ALLEGATIONS

**A.    Pharmaceutical manufacturers may promote a drug only for on-label, approved
indications.**

16.    Under the Food, Drug, and Cosmetics Act ("FDCA") 21 U.S.C. §§ 301-97, the

sponsor of a pharmaceutical product must demonstrate, through clinical trials and testing, to the

satisfaction of the FDA that the drug is safe and effective for each of its intended uses and gain

final approval from the FDA before it can market the drug in the United States.[3]

---

[3] 21 U.S.C. § 355(a) & (d).

17.     The FDA's (often multi-year) approval process does not result in approval of a drug for the treatment of a sickness in general. Rather, the FDA approves a drug for treatment of a specific condition for which the drug has been tested in patients. The specific approved use is called the "indication" for which the drug may be prescribed. Additionally, as part of the approval process, the FDA specifies particular dosages determined to be safe and effective for each indication.

18.     The indications and dosages approved by the FDA are set forth in the drug's labeling, the content of which must also be reviewed and approved by the FDA.[4]

19.     Under the Food and Drug Administration Modernization Act of 1997 ("FDAMA"), if a manufacturer wishes to market or promote an approved drug for uses not approved by the FDA, the manufacturer must resubmit the drug for another series of clinical trials and testing similar to those required for the initial approval.[5] Until subsequent approval of the new use has been granted, the unapproved use is considered to be "off-label": use of an approved drug for any purpose, or in any manner, other than what is described in the drug's labeling. Off-label use includes treating a condition not indicated on the label, treating the indicated condition at a different dose or frequency than specified on the label, or treating a different patient population (*e.g.*, treating a child when the drug is approved only to treat adults).

20.     Although physicians may prescribe drugs for off-label usage, the law *prohibits drug manufacturers* from marketing or promoting a drug for a use that the FDA has not approved. Specifically, under the FDCA, (1) a manufacturer may not introduce a drug into interstate commerce with an intent that it be used for an off-label purpose, and (2) a

---

[4] 21 U.S.C. §§ 352, 355(d).

[5] 21 U.S.C. § 360aaa(b) & (c).

manufacturer illegally "misbrands" a drug if the drug's labeling (which includes all marketing and promotional materials relating to the drug) describes intended uses for the drug that have not been approved by the FDA.[6]

21.     Thus, the FDCA prohibits drug companies from promoting approved drugs for unapproved uses and/or from making misleading claims as to the drug's safety or effectiveness.[7] These regulations are intended to protect patients and consumers by ensuring that drug companies do not promote drugs for uses other than those that the manufacturer has demonstrated to be safe and effective to the FDA's satisfaction.

**B.     Subsys is a highly addictive and tightly controlled narcotic.**

22.     In March 2012, Insys began selling Subsys, a sublingual (under the tongue) fentanyl spray with FDA approval for only a very limited indication: management of breakthrough pain in adult cancer patients who are already receiving and who are tolerant to opioid therapy for their underlying persistent cancer pain. This narrow indication makes the market for FDA-approved use of Subsys small.

23.     Subsys is one of the most powerful narcotics available, estimated to be 50 times as potent as heroin and 50-100 times more potent than morphine. Side effects of this fentanyl spray include the potential of death caused by respiratory suppression.

24.     Like other opioids (including Oxycontin (oxycodone), Opana (oxymorphone), Dilaudid (hydromorphone), and Vicodin (hydrocodone)), fentanyl is highly addictive and is among the medications at the epicenter of the growing opioid epidemic in the United States.[8]

---

[6] 21 U.S.C. §§ 331, 352.

[7] *See* 21 U.S.C. §§ 331, 352, 355(d).

[8] On November 5, 2015, the U.S. Drug Enforcement Agency ("DEA") announced that drug overdose deaths had become the leading cause of injury death in the United States, ahead of deaths from motor vehicle accidents and firearms. On February 2, 2016, based on the continuing widespread abuse of prescription opioids and resulting astronomical increase in heroin use nationally, President Obama proposed $1.1 billion in new funding "to address the prescription opioid abuse and heroin use epidemic." The Fact Sheet announcing the President's budget proposal

Because of the potential dangers posed by the misuse and abuse of opioids, fentanyl is designated as a federal Schedule II Controlled Substance; products that contain fentanyl are part of a tightly controlled system of distribution as a result.

25.     For example, the FDA requires that doctors prescribing and pharmacies dispensing Subsys enroll in the Transmucosal Immediate Release Fentanyl ("TIRF") Risk Evaluation and Mitigation Strategy ("REMS") Access program. The TIRF REMS Access program consists of a restricted distribution program to reduce the risk of misuse, abuse, addiction, and overdose with Subsys and other fentanyl drugs with the same or similar limited indication. Doctors must commit to reviewing educational material about TIRF drugs, acknowledge the approved indications and risks, counsel patients, and ensure the drugs are prescribed only to appropriate patients.

**C.     Defendants defrauded Class members by secretly marketing Subsys off-label and fraudulently obtaining insurance coverage for off-label Subsys prescriptions.**

26.     Given the single approved indication of treatment of breakthrough cancer pain in opioid-tolerant cancer patients, the market for FDA-approved use of Subsys was highly limited. Insys knew, though, that "off-label" use of the drug could present significant financial rewards. The country's consumption of opioids is well documented and Subsys was a particularly attractive new option given its potency and its sublingual delivery.

---

stated, among other things, that: New Data from the U.S. Centers for Disease Control and Prevention ("CDC") shows that opioids — a class of drugs that include prescription pain medications and heroin — were involved in 28,648 deaths in 2014.  In particular, the CDC found a continued sharp increase in heroin-involved deaths and an emerging increase in deaths involving synthetic opioids, such as fentanyl. Between 2015 and 2016, deaths by fentanyl and similar synthetic opioids nearly doubled nationally, accounting for more than 42,249 deaths in 2016, according to the CDC. *Drug Overdose Death Data*, CENTERS FOR DISEASE CONTROL AND PREVENTION, (last visited Sept. 10, 2018), https://www.cdc.gov/drugoverdose/data/statedeaths.html. In July of 2017, the *Boston Globe* reported that in the prior year opioids were linked to 2,069 deaths in Massachusetts, a 15 percent increase from the year before. Fentanyl was found in 69 percent of those deaths in which a toxicology screen was available. Brian MacQuarrie, *N.E. Fentanyl Deaths 'Like No Other Epidemic,"* BOSTON GLOBE, (July 27, 2017), https://www.bostonglobe.com/metro/2017/07/27/dea/TFsSiM6h83snc5f9cbRAdN/story.html.

27.     To reach the "off-label" market, Insys had to both drive demand, convincing prescribers to write prescriptions for this potent narcotic for treatment other than the FDA-approved indications, and ensure supply, finding a way to get the prescriptions filled and paid for in a world in which health insurers, including Plaintiffs, would cover Subsys only for on-label uses.

28.     Insys drove off-label demand in two key ways: marketing off-label uses of the drug and paying kickbacks to Subsys prescribers. Insys attempted to mask payments to prescribers by structuring them as sham "speaker fees." While the exact amount of those kickbacks has yet to be determined, criminal indictments of the recipients indicate that Insys paid "speaker fees" of hundreds of thousands, if not millions, of dollars to Subsys prescribers.

29.     Insys ensured supply by creating the Insys Reimbursement Center to impersonate doctor office personnel and lie to TPPs to circumvent coverage restrictions on off-label Subsys prescriptions. Over the last several years, approximately 80 percent of Subsys prescriptions were written for impermissible off-label uses, including for migraines and back pain, rather than for breakthrough cancer pain in patients who were already opioid-tolerant.

**1.      Insys engaged in illegal off-label promotion and provided illegal kickbacks to doctors.**

30.     Over the years, Insys told the public that, among other things: (i) "[w]e are only selling a breakthrough cancer pain drug"; (ii) "no one at Insys wants to see anyone taking [Subsys] for anything other than cancer pain"; and (iii) Insys was "committed to complying with laws governing [Subsys's] sales, marketing and promotional practices."[9] The reality, however, was very different.

---

[9] Insys Therapeutics, Inc., Press Release Report 2Q2015 Results, http://investors.insysrx.com/phoenix.zhtml?c=115949&p=irol-newsArticle_Print&ID=2076459.

31.     Insys orchestrated and implemented a deliberate and sustained campaign to promote Subsys for use by patients other those opioid-tolerant cancer patients suffering from breakthrough pain. Insys's off-label marketing scheme included at least the following tactics: (i) targeting physicians who primarily treat patients with pain other than breakthrough cancer pain or are otherwise ill-suited or unqualified to prescribe dangerous Schedule II narcotics; (ii) providing economic incentives and other encouragement to sales representatives and managers to promote Subsys for off-label uses; and (iii) providing monetary and in-kind kickbacks to doctors prescribing Subsys for off-label uses (such as back pain and migraines) and encouraging them to prescribe at ever-increasing and more expensive doses.

32.     For example, Insys sales representatives aggressively targeted high volume opioid prescribers, marketing Subsys for breakthrough pain generally, as opposed to breakthrough cancer pain. As a result, despite the limited approved use of Subsys for breakthrough cancer pain, a very small percentage of Subsys prescribers are oncologists. The majority of Subsys prescribers are pain specialists, with primary care physicians, neurologists, dentists, and podiatrists also writing Subsys prescriptions.

33.     At the heart of the Insys illegal kickback scheme was the company's so-called "Speaker Program." In theory, Insys paid prescribers to give presentations on Subsys with the goal of increasing brand awareness via peer-to-peer so-called "educational lunches and dinners." In reality, Insys simply used the Speaker Programs as vehicles to pass payments to doctors for writing Subsys prescriptions.

34.     As noted in the New Jersey Attorney General's complaint filed on October 5, 2017 against Insys, Insys management instructed its sales representatives to offer speaking engagements to the doctors who showed a "willingness to prescribe" and discouraged

oncologists as speakers, instead seeking to focus on other kinds of doctors because "[r]ight now there are way too many Pain Targets that need to prescribe."[10]

35.     Most of the presentations made only a cursory mention of Subsys, with some failing to mention Subsys at all. Often, the presenting doctor was the only person in the room with prescribing authority, with chairs filled instead by sales representatives and other non-prescribers. Insys sales representatives routinely forged attendance sheets.

36.     That payment for prescription-writing was the goal of the Speaker Programs is evidenced by the selection of prescribers for these lucrative opportunities. Insys instructed its sales representatives to target known high volume opioid prescribers, including those running pain clinics and "pill mills," rather than oncologists treating patients that met the indications set forth in the Subsys label.

37.     As the U.S. Government concluded in its indictment of Insys and various current and former Insys executives, the Speaker Program was a criminal means for Insys to pay illegal kickbacks to prescribers in exchange for off-label Subsys prescriptions. The top 10 prescribers of Subsys were paid handsomely for their participation in the Speaker Program, collectively receiving more than $870,000 in speaker fees in 2013 and 2014 alone.

38.     Multiple Insys sales representatives and Subsys prescribers who received illegal kickback payments have been arrested on federal drug and insurance fraud charges in connection with this scheme, with at least one of Insys's former sales representatives pleading guilty. Federal and state authorities continue to investigate Inysys's nationwide misconduct.  Select other arrests, criminal charges, and guilty pleas arising from Insys's illegal off-label promotion of Subsys are alleged herein.

_____

[10] See Complaint: *Porrino v. Insys Therapeutics, Inc.*, Superior Court of New Jersey, Chancery Division, Middlesex Vicinage.

2.     **Insys created a reimbursement unit to defraud TPPs and get around payor restrictions.**

39.     Insys's efforts were not limited to off-label promotion and illegal payments to prescribers, though, because getting doctors to prescribe Subsys for off-label uses was only half of the battle. Because of the risk profile, tight regulation, limited on-label population, and the expense of Subsys (approximately $100 per dose),[11] TPPs placed restrictions on access to the drug. And if TPPs would not cover the drug, patients would not fill the prescription and Insys would not make money on Subsys.

40.     TPPs typically retain pharmacy benefit managers ("PBMs") to administer prescription drug benefits for employers and health plans and to run large mail-order pharmacies. Among a PBM's primary responsibilities is the development and maintenance of a formulary or preferred drug list: a list of pharmaceuticals covered by a prescription drug plan or another insurance plan offering prescription drug benefits. PBMs also contract with pharmacies, negotiate discounts and rebates with drug manufacturers, and process the payment of prescription drug claims.

41.     Plaintiffs and their PBMs, like other TPPs, required that patients get prior authorization from the insurer before a claim for a Subsys prescription could be submitted and

---

[11] Between 2012 and 2015, a 120-dose supply of Subsys ranged from $2,830.08 to $4,336.80 for the lowest dose (100 mcg) and $14,638.80 to $25,442.40 for the highest dose (1600 mcg):

| Strength (mcg) | December 2012 | December 2013 | December 2014 | December 2015 |
|---|---|---|---|---|
| 100 | $2,830.08 | $3,350.40 | $3,960.98 | $4,336.80 |
| 200 | $3,577.20 | $4,232.40 | $5,002.82 | $5,478.00 |
| 400 | $5,192.88 | $6,144.00 | $7,263.43 | $7,953.60 |
| 600 | $6,742.56 | $7,977.60 | $9.430.67 | $10.326.00 |
| 800 | $8.302.80 | $9,828.00 | $11,617.56 | $12,721.20 |
| 1200 | $11,470.80 | $13,536.00 | $18,861.34 | $20,652.00 |
| 1600 | $14,638.80 | $17,275.20 | $23,235.12 | $25,442.40 |

paid for/reimbursed. This required a doctor, or doctor's office, to confirm that the patient had an active cancer diagnosis, was being treated by an opioid and was opioid-tolerant, and was being prescribed Subsys to treat breakthrough cancer pain. Failure to meet any of these requirements meant denial of the authorization and no coverage for the prescription.

42.     For example, BCBSLA will only pay/reimburse for Subsys prescriptions for the FDA-approved indication and for which prior authorization was obtained.

43.     Like other insurers, BCBSLA prohibits anyone other than the prescriber from making a prior authorization request.

44.     Insys knew that TPPs and their policies could prevent Insys from generating significant revenue from Subsys sales. As Insys acknowledged in its SEC filings:

> Our sales of, and revenue from, Subsys depend in significant part on the coverage and reimbursement policies of third-party payors, including government payors such as Medicare and Medicaid, and private health insurers. All third-party payors are sensitive to the cost of drugs and consistently implement efforts to control these costs, which efforts include but are not limited to establishing excluded or preferred drug lists. Subsys has been, and will likely continue to be, subject to these restrictions and impediments from third-party payors, particularly PBMs and private health insurers.[12]

45.     Insys created the Insys Reimbursement Center to get around these restrictions: Insys used its employees to interact with TPPs to obtain prior authorization and insurance coverage for expensive – and usually off-label – Subsys prescriptions, even if that meant deliberately falsifying records and lying to TPPs.

46.     To deceive medical insurers into making payments for Subsys for off-label conditions, Insys Reimbursement Center employees were directed to and did, among other things: (i) falsify patient diagnoses; (ii) pretend to be employees of the prescribing doctor; and

---

[12] Insys Therapeutics, Inc., 2016 Form 10-K, April 03, 2017, p. 26.

(iii) use company-generated scripts to lie during telephone conversations with TPP personnel. Under instruction of Insys's management, reimbursement team members routinely, intentionally, and falsely represented to TPPs that patients met all of the criteria necessary to render Subsys prescriptions covered and payable, knowing that was not the case.

47.     To use Insys's services, the patient's healthcare provider simply needed to opt in to the Insys Patient Services Center program by signing Health Insurance Portability and Accountability Act ("HIPAA") compliant forms for each patient. Then, according to Insys's website, "at no cost to the patient or healthcare provider," Insys's "dedicated team" of specialists in the Insys Reimbursement Center would handle the complex insurance paperwork required to be submitted to the PBMs.

48.     Meanwhile, Insys would offer patients a free trial of Subsys to allow for titration to their "effective dose" and bridge the prior authorization process until TPP reimbursement was in place.

49.     The Insys Reimbursement Center furthered the unlawful scheme in two ways.

50.     First, the Insys Reimbursement Center served as a kickback to prescribers in the form of valuable administrative services provided at no charge. The Insys Reimbursement Center handled the prior authorization process for Subsys prescribers, relieving physician offices and staff from the work.

51.     Second, the Insys Reimbursement Center enabled Insys to control (false) messaging to TPPs, including Plaintiffs, by conspiring with prescribers to fraudulently obtain authorization for otherwise non-covered prescriptions.

52.     Plaintiffs prohibit anyone other than the prescriber from making a prior authorization request.

53.     The Insys Reimbursement Center employees – as neither the covered member nor the prescriber – concealed or misrepresented their identities when seeking prior authorizations for Subsys claims.

54.     At the direction of Insys executives, these Insys employees would inform PBMs and/or TPPs that they were calling from the prescriber's office, implying that they were employees of the prescriber.

55.     To help mask the misrepresentations, Insys blocked access to the Insys Reimbursement Center's phone number, hiding the location of the call and preventing those administering the claims for Plaintiffs and other TPPs from recognizing that the calls were being made from a location other than the prescriber's offices.

56.     Because Insys understood that PBMs and insurers would not authorize payment for non-indicated uses of Subsys, Insys employees called in prior authorization requests and represented to the PBM or insurer that the patient had a cancer diagnosis and was tolerant to opioids, even when that was not the case.

57.     Specifically, according to criminal complaints filed against Insys executives and a manager of an Insys team responsible for obtaining prior authorizations from insurance companies, Insys employees were directed to represent that the patients for whom prior authorizations were being sought had cancer even when they did not. Insys employees were trained to answer prior authorization questions using a script, sometimes called "the spiel," to mislead PBMs and insurers.

58.     "The spiel" read: "The physician is aware that the medication is intended for the management of breakthrough pain in cancer patients. The physician is treating the patient for their pain (or breakthrough pain, whichever is applicable)."[13]

59.     "The script deliberately omitted the word 'cancer.'"[14]

60.     According to the criminal complaints, Insys employees were also directed to fraudulently assert that a patient had a cancer diagnosis regardless of the patient's history and regardless of whether the prescriber had prescribed Subsys for a different diagnosis.

61.     Similarly, Insys employees were directed to falsely confirm lists of tried and failed medications that would qualify the patient to try Subsys.

62.     Insys used this Insys Reimbursement Center from at least January 2013 through October 2016.

**D.      Insys scheme has been the focus of criminal indictments, pleas, and convictions.**

63.     Insys's fraudulent scheme has received much scrutiny by the federal and state governmental authorities.

64.     In December 2016, several of Insys's pharmaceutical executives and managers were indicted for, *inter alia*, conspiracy to mislead and defraud health insurance providers and charged with conspiracy to commit racketeering, conspiracy to commit wire and mail fraud, and RICO conspiracy.

65.     According to the indictment, Insys achieved its goal of increasing prescriptions by setting up and using the Insys Reimbursement Center to obtain prior authorizations directly from insurers and PBMs. The indictment also addressed Insys's unlawful payments to and receipt of

---

[13] Linette Lopez, *Here's the Spiel One Drug Company Allegedly Used to Push Its Opioids on Americans*, BUSINESS INSIDER, (July 14, 2017), https://www.businessinsider.com/anthem-insys-opioid-lawsuit-2017-7.

[14] *Id.*

illegal kickback by select physicians as an inducement to and in exchange for their prescribing Subsys. In its indictment, the U.S. Government concluded, among other things, that under the direction and supervision of Michael Babich, former CEO/COO, Alec Burlakoff, former VP of Sales, and others of Insys's highest-ranking executives, the Insys Reimbursement Center perpetrated a nationwide fraud upon insurers and PBMs, including Medicare and Medicaid. Burlakoff pleaded guilty to racketeering on November 28, 2018.

66.     John Kapoor, Insys founder and chairman, has also been charged with racketeering and fraud, including conspiring to bribe practitioners, many of whom operated pain clinics to get them to prescribe Subsys.[15]

67.     In August 2018, Insys announced a settlement in principle with the U.S. Department of Justice under which Insys would pay at least $150 million, with potentially up to $75 million more for "contingent events," to resolve claims that Insys knowingly offered and paid kickbacks to induce prescriptions of Subsys and knowingly caused Medicare and other federal health care programs to pay for off-label uses of the drug.

**E.      Insys's scheme harmed Plaintiffs and the Class.**

68.     Insys's scheme was designed to cause, and did cause, Plaintiffs and Class members to pay for Subsys prescriptions to treat conditions for which Subsys did not and does not have FDA approval, by unlawfully promoting a highly dangerous and addictive drug for non-approved uses and defrauding TPPs and PBMs in the prior authorization process.

69.     Defendants engaged in unfair competition or unfair, unconscionable, deceptive, or fraudulent acts, and/or practices in violation of state consumer protection and unfair trade practices statutes. The direct and proximate result of their misrepresentations, unlawful schemes,

_____

[15] First Superseding Indictment, *United States v. Babich, et al.*, No. 1:16-cr-10343-ADB (D. Mass. Oct. 24, 2017), https://www.documentcloud.org/documents /3442665-MA-Indictment-Insys.html.

and courses of conduct was the inducement of Plaintiffs and members of the Class to purchase, reimburse, and/or pay for prescriptions of Subsys for off-label purposes.

70.     Defendants' actions and failures to act (including, but not limited to, the false and misleading representations that patients had cancer during the prior authorization process) constitute acts, uses, or employment by Defendants of unconscionable commercial practices, deception, fraud, misrepresentations, and the knowing concealment, suppression, or omission of material facts with the intent that others rely upon such concealment, suppression, or omission of material facts in connection with the sale of Subsys manufactured by Insys, all in violation of states' consumer protection statutes.

71.     Insys also engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of state statutes prohibiting deceptive and unlawful business practices when it engaged in a kickback and off-label marketing scheme for the purposes of inducing prescribers to write Subsys prescriptions for off-label and uncovered uses.

72.     Insys's unfair or deceptive acts and practices were specifically designed to and did induce Plaintiffs and the Class to pay for hundreds of millions of dollars for Subsys prescriptions that it would not have paid but for Insys's conduct.

73.     Defendants intended that Plaintiffs, TPPs, and PBMs rely on their materially deceptive practices and that Plaintiffs and members of the Class would purchase or pay for Subsys as a consequence of the deceptive practices, including Defendants' misrepresentations and omissions of material fact to develop an off-label market. Defendants' deceptive representations and material omissions to Plaintiffs and members of the Class constituted unfair and deceptive acts and practices. Plaintiffs and members of the Class were deceived by Defendants' misrepresentations.

74.     As a proximate result of Defendants' misrepresentations, Plaintiffs and members of the Class have suffered an ascertainable loss, in an amount to be determined at trial, in that they paid millions of dollars for prescriptions of Subsys that they would not have paid had Defendants not engaged in unfair and deceptive conduct. This injury is of the type state consumer protection statutes were designed to prevent and directly results from Defendants' unlawful conduct.

75.     Insys and the John Does are the supplier, manufacturer, advertiser, and seller that are subject to liability for unfair, deceptive, fraudulent, and unconscionable consumer sales practices.

76.     Plaintiffs and members of the Class, unaware of Defendants' scheme, paid all or part of the cost for these prescriptions and were harmed by Defendants' conduct.

77.     But for Defendants' unlawful actions, Plaintiffs and members of the Class would not have paid hundreds of millions of dollars for off-label and improper prescriptions of Subsys.

## V.     FRAUDULENT CONCEALMENT AND STATUTES OF LIMITATIONS

78.     Statutes of limitations do not bar Plaintiffs' claims. Plaintiffs had no knowledge of Defendants' unlawful conspiracy and fraudulent behavior alleged herein, or of any facts to place them on inquiry notice of the claims set forth herein, until (at the earliest) the existence of the government investigations and subpoenas were publicly disclosed in December 2016.

79.     Defendants engaged in an illegal scheme to market and increase prescriptions of Subsys for off-label use. Criminal and civil penalties for engaging in such conduct are severe. Not surprisingly, Defendants took affirmative measures to conceal their conspiratorial conduct.

80.     Defendants actively concealed, suppressed, and omitted material facts to Plaintiffs and members of the Class concerning Defendants' unlawful activities to increase off-label prescriptions of Subsys. The concealed, suppressed, and omitted facts would have been

important to Plaintiffs and members of the Class as they related to the cost of Subsys they purchased.

81.     For example, Insys repeatedly and expressly stated throughout the Class Period, that: (i) "[w]e are only selling a breakthrough cancer pain drug"; (ii) "no one at Insys wants to see anyone taking [Subsys] for anything other than cancer pain"; and (iii) Insys was "committed to complying with laws governing [Subsys's] sales, marketing and promotional practices."[16]  It was reasonable for members of the Class to believe that Insys was being truthful.

82.     Through their misleading, deceptive, false and fraudulent statements, Defendants effectively concealed their conspiracy, thereby causing economic harm to Plaintiffs and the Class. The public statements were designed to mislead Plaintiffs and Class members into paying for off-label uses of Subsys.

83.     These types of false statements and others made by Defendants helped conceal the illegal conspiracy entered into by Defendants to promote and facilitate the off-label use of Subsys.

84.     Further, Defendants' conspiracy, by its very nature, was self-concealing. Accordingly, a reasonable person under the circumstances would not have been alerted to investigate the legitimacy of Defendants' conduct before these disclosures.

85.     Because of the deceptive practices and techniques of secrecy employed by Defendants and their co-conspirators to conceal their illicit conduct, Plaintiffs and Class members could not have discovered the conspiracy at an earlier date by the exercise of reasonable diligence.

---

[16] Press Release Report 2Q2015 Results, *supra* note 9.

86.     Statutes of limitations as to Plaintiffs' claims under the federal and state common laws identified herein did not begin to run and/or have been tolled for all claims alleged by Plaintiffs and the Class as a result of Defendants' unlawful conduct. Despite the exercise of reasonable diligence, Plaintiffs and members of the Class were unaware of Defendants' unlawful conduct and did not know that they were paying for off-label uses of Subsys throughout the United States during the Class Period.

87.     For these reasons, Plaintiffs' claims are timely under all of the federal, state and common laws identified herein.

## VI.     CLASS ACTION ALLEGATIONS

88.     Plaintiffs bring this action on behalf of themselves and, under Fed. R. Civ. P. 23(a) and 23(b)(3) as a representative of the proposed Class defined as follows:

> All third party payors in the United States and its territories (other than governmental entities), who indirectly purchased, paid, and/or reimbursed, in whole or in part, for the drug Subsys from January 1, 2013 to the present for purposes other than resale (the "Class Period").

89.     The following persons or entities are excluded from the proposed Class:

a.  Insys and its officers, directors, management, employees, subsidiaries, or affiliates;

b.  John Does 1-100;

c.  All persons or entities who purchased Subsys directly from Insys or its affiliates;

d.  All federal or state governmental entities;

e.  Any co-conspirators;

f.  Pharmacy Benefit Managers; and

g.  The judges in this case and any members of their immediate families.

90.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the prerequisites of numerosity, commonality, typicality, and adequacy

91. **Numerosity** (Rule 23(a)(1)): Members of the Class are so numerous that joinder is impracticable. Plaintiffs believe the Class includes thousands of TPPs, in an amount to be determined in discovery and at trial. The identities of Class members will be readily ascertainable through business records kept in regular order.

92. **Commonality** (Rule 23(a)(2)): Common questions of law and fact exist as to all members of the Class. This is particularly true given the nature of Defendants' conspiracy, which was generally applicable to all members of the Class, thereby making appropriate relief with respect to the Class as a whole. Specifically, Defendants' misconduct was directed at all members of the Class, their members, their PBMs, and respective prescribing physicians. All members of the Class have common questions of fact and law, *i.e.*, whether Defendants engaged in a comprehensive program and well-orchestrated scheme of deceptive and misleading marketing in promoting the use of Subsys. Other common questions of law and fact include, but are not limited to:

h. Whether, due to Defendants' fraud, Plaintiffs and members of the Class paid for Subsys prescriptions to treat conditions for which the drug is not approved;

i. Whether Defendants engaged in a conspiracy to promote the off-label sale of Subsys;

j. Whether Defendants engaged in a misleading and/or deceptive scheme of improperly marketing and selling Subsys for treatment of indications for which the drug was not lawfully approved;

k. Whether Defendants engaged in a pattern or practice that caused Plaintiffs and members of the Class to pay for Subsys prescriptions for non-medically necessary uses;

l. Whether Defendants engaged in deceptive and/or misleading activity that caused Plaintiffs and members of the Class to pay for Subsys prescriptions to be utilized for non-FDA-approved uses;

m. Whether Defendants engaged in deceptive and/or misleading activity with the intent to defraud Plaintiffs and members of the Class;

n.  Whether Defendants are liable to Plaintiffs and members of the Class for damages for conduct actionable under RICO;

o.  Whether Defendants are liable to Plaintiffs and members of the Class for damages for conduct actionable under various state consumer protection statutes; and

p.  Whether Defendants unjustly enriched themselves by their acts and omissions, at the expense of Plaintiffs and members of the Class.

93.  The questions of law and fact identified above are common to the Class and predominate over questions affecting only individual members.

94.  The conduct and patterns of conduct alleged herein, relating to Insys's sale and marketing of Subsys, occurred between at least 2013 and at least December 2016, if not continuing beyond and/or up to the present, and is common to the Class.

95.  The conduct and patterns of conduct alleged herein, relating to the sale and marketing of Subsys, took place throughout the United States, the District of Columbia and Puerto Rico, as well as various other territories and foreign countries. The actual sales and marketing activities described herein were executed principally by Defendants' sales forces and participating physicians and vendors, located all over the country and thus is common to the Class.

96.  **Typicality** (Rule 23(a)(3)): Plaintiffs' claims are typical of the claims of the Class because their claims arise from the same course of conduct by Defendants, *i.e.*, false and deceptive marketing and business practices in promoting and securing use of Subsys. Plaintiffs and members of the Class have been injured as a result of the Defendants' wrongful conduct described herein.

97.  **Adequacy of Representation** (Rule 23(a)(4)): Plaintiffs and their counsel will fairly and adequately protect, represent, and advance the interests of the Class. The interests of Plaintiffs are coincident with, and not antagonistic to, those of the other Class members.

98.     Plaintiffs are represented by counsel with experience in the prosecution of class action litigation, and with particular experience with pharmaceutical litigation.

99.     Adjudicating the claims of the members of the Class as a class action is superior to any other available methods because it allows for the fair and efficient adjudication of this controversy. Prosecution as a class action will eliminate the possibility of repetitious litigation and will permit a large number of similarly situated entities to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that would result from prosecuting numerous individual actions.

100.    There are no known circumstances presenting difficulties in management that would preclude maintenance as a class action. Furthermore, any potential difficulties in maintaining this action as a class action are greatly outweighed by the benefits of proceeding through the class mechanism — *i.e.*, providing persons and entities a method for pursuing claims that would not be practicable if pursued on an individual basis.

## VII.   CLAIMS FOR RELIEF

### COUNT ONE:
### VIOLATION OF 18 U.S.C. §1962(c) – SUBSYS PROMOTION AND AUTHORIZATION ENTERPRISE

101.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

102.    Defendants are "person[s]" within the meaning of 18 U.S.C. §1961(3) who conducted the affairs of the Subsys Promotion and Authorization Enterprise (the "Enterprise") through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

103.    The Enterprise is an association-in-fact within the meaning of 18 U.S.C. § 1961(4), consisting of Defendants (including their employees and agents), compensated prescribers (including their employees and agents), as well as other as yet unknown agents, co-

conspirator practitioners and pharmacies, and persons employed by or working with Defendants in furtherance of the Enterprise. All entities are "person[s]" within the meaning of 18 U.S.C. §1961(3), are distinct from the Enterprise, and acted to enable Defendants to fraudulently market Subsys and procure Subsys prescriptions for patients who did not meet the pre-approval criteria. The Enterprise functioned as an ongoing organization and continuing unit. The Enterprise was created and organized to effectuate a pattern of racketeering activity and maintained systematic links for a common purpose: the procurement of prescriptions of and payment for Subsys for unapproved off-label uses.

104.    Each of the Defendants, in concert with other as yet unknown agents, co-conspirator practitioners and pharmacies, and persons employed by Defendants in furtherance of the Enterprise, created and maintained systematic links to achieve the common purposes of the Enterprise including the procurement of prescriptions of and payment for Subsys for unapproved off-label uses while improperly inducing physicians to prescribe and fraudulently convincing TPPs to pay for Subsys for pain other than break through cancer pain. Each of the participants in the Enterprise received substantial revenue from the scheme. Such revenue was exponentially greater than it would have been if Subsys was marketed and prescribed in accordance with its label. All participants in the Enterprise were aware of Defendants' control over the activities of the Enterprise in promoting and securing prescriptions and payments for Subsys for unapproved off-label uses. Furthermore, each portion of the Enterprise benefited from the existence of the other parts.

105.    The Enterprise engaged in and affected interstate commerce, because, *inter alia*, it marketed, promoted, sold, or provided Subsys to thousands of individuals and entities throughout the United States, including the District of Massachusetts.

106.    Defendants exerted control over and management of the affairs of the Enterprise.

107.    Defendants conducted and participated in the affairs of the Enterprise through patterns of racketeering activity that includes acts indictable under 18 U.S.C. §1341 (mail fraud), §1343 (wire fraud), §371 (conspiracy) and § 1952 (use of interstate facilities to conduct unlawful activity).

108.    Defendants' fraudulent scheme consisted of, inter alia: deliberately misrepresenting to TPPs and/or PBMs information about patients' diagnoses and treatment for whom pre-approval for Subsys was sought, that such patients were suffering from breakthrough cancer pain, and that such patients were opioid tolerant. By making those misrepresentations and omissions, the Enterprise ensured that off-label prescriptions would be approved and paid for by fraud and a larger number of Subsys prescriptions would be written and filled for off-label uses. This translated into higher sales (and therefore profits) for Defendants.

109.    The persons engaged in the Enterprise are systematically linked through contractual relationships, financial ties, and continuing coordination of activities, as spearheaded by Defendants. There is or was regular communication and information sharing among Defendants, other as yet unknown agents, co-conspirator practitioners and pharmacies, and persons employed by or working with Defendants. Typically, this communication occurred through the use of the wires and the mail in which Defendants, other as yet unknown agents, co-conspirator practitioners and pharmacies, and persons employed by or working with Defendant shared information regarding the prescribing of Subsys for other than approved uses. Defendants, other as yet unknown agents, co-conspirator practitioners and pharmacies, and persons employed by or working with Defendants functioned as a continuing unit for the purposes of implementing

the Enterprise scheme and, when issues arose during the scheme, each agreed to take actions to hide the scheme and continue the Enterprise existence.

110.    At all relevant times, other as yet unknown agents, co-conspirator practitioners and pharmacies, and persons employed by or working with Defendants were aware of Defendants' conduct, were knowing and willing participants in that conduct, and reaped benefits from that conduct. Each other as yet unknown agents, co-conspirator practitioners and pharmacies, and persons employed by or working with Defendants also knew, but did not disclose, that the other as yet unknown agents, co-conspirator practitioners and pharmacies, and persons employed by or working with Defendants were engaged in the same scheme, to the detriment of TPPs, including Plaintiffs and the Class members. But for the Enterprise's unlawful fraud, other as yet unknown agents, co-conspirator practitioners and pharmacies, and persons employed by or working with Defendants would have had the incentive to disclose the deceit by Defendants to patients, consumers, TPPs, and others. By failing to disclose this information, other as yet unknown agents, co-conspirator practitioners and pharmacies, and persons employed by or working with Defendants perpetuated the Enterprise's scheme and reaped substantial benefits.

111.    The other as yet unknown agents, co-conspirator practitioners and pharmacies, and persons employed by or working with Defendants participated in the conduct of the Enterprise, sharing the common purpose of marketing and procuring the prescriptions of and payment for Subsys for other than approved purposes, through a pattern of racketeering activity which includes multiple instances of mail fraud, multiple instances of wire fraud, and knowingly making material misstatements or omissions as set forth herein above to TPPs and PBMs in furtherance of the fraudulent scheme.

112.     Defendants' use of the mails and wires to perpetuate their fraud involved thousands of communications, including, but not limited to:

q.   maintaining communications with patients and Class members, including Plaintiffs, inducing payments for Subsys by misrepresenting the purpose for which the prescriptions for Subsys were written and without disclosing the safety and risks of Subsys for treatment of non-approved off-label purposes;

r.   receiving the proceeds in the course of and resulting from Defendants' improper scheme;

s.   transmitting and receiving monies from members of the Class; and

t.   transmitting and receiving payments, directly or indirectly, in exchange for activities in furtherance of the Enterprise.

113.     At all times during the fraudulent scheme, Defendants, other as yet unknown agents, co-conspirator practitioners and pharmacies, and persons employed by or working with Defendants had a legal and ethical duty and obligation of candor and honest dealing with TPPs and their agents, the public, physicians, and the medical community.

114.     The conduct of the Enterprise described above constitutes "racketeering activity" within the meaning of 18 U.S.C. §1961(1). Defendants' decisions and activities in connection with the Enterprise to routinely conduct its transactions in such a manner constituted a "pattern of racketeering activity" within the meaning of 18 U.S.C. § 1961(5).

115.     The racketeering activities amounted to a common course of conduct intended to deceive and harm Plaintiffs and members of the Class. Each such racketeering activity was related, had similar purposes, involved similar or the same participants and methods of commission, and had similar results affecting the same or similar victims, including Plaintiffs and members of the Class. Defendants' racketeering activities were part of their ongoing business and constituted a continuing threat to the property of Plaintiffs and the Class.

116.     Plaintiffs and members of the Class have been injured in their property by reason of these violations in that Plaintiffs and members of the Class paid hundreds of millions of dollars for Subsys that they would not have paid had Defendants not engaged in this pattern of racketeering activity.

117.     The injuries to Plaintiffs and members of the Class were directly and proximately caused by Defendants' racketeering activity.

118.     Patients, physicians, PBMs, pharmacy and therapeutic committee members, and TPPs, including Plaintiffs and members of the Class, relied on the racketeering activities of Defendants and the Enterprise. Plaintiffs and Class members relied on the representations as to diagnoses and conditions for which patients were being prescribed Subsys and for which approval of the prescriptions for Subsys was sought. Because Defendants controlled the knowledge of the conditions for which the patients being prescribed Subsys were being treated and controlled communications with TPPs regarding approval for those prescriptions, all Class members were obligated to rely on Defendants' and the Enterprise's representations. Further, Defendants perpetuated this reliance by taking the steps to suppress the truthful information about the patients' condition that would have caused members of the Class to deny approval for the Subsys prescriptions.

119.     By virtue of these violations of l8 U.S.C. § 1962(c), Defendants are liable to Plaintiffs and the Class for three times the damages sustained plus the costs of this suit, including reasonable attorney's fees.

120.     As a direct and proximate result of Defendants' fraud, Plaintiffs and the Class have suffered damages estimated to be in the hundreds of millions of dollars. Plaintiffs and the

Class members are entitled to compensatory damages, equitable relief, punitive damages, costs, and reasonable attorneys' fees.

## COUNT TWO:
## VIOLATION OF 18 U.S.C.§ 1962(d) – RICO CONSPIRACY

121.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

122.    Section 1962(d) of RICO provides that it "shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

123.    Defendants have violated 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c). The object of this conspiracy has been and is to conduct or participate in, directly or indirectly, the conduct of the affairs of the Enterprise described previously through a pattern of racketeering activity. Defendants conspired with, *inter alia*, other as yet unknown agents, co-conspirator practitioners and pharmacies, and persons employed by or working with Defendants for common purposes, including of the procurement of prescriptions of and payment for Subsys for unapproved off-label uses while improperly inducing physicians to prescribe and fraudulently convincing TPPs to pay for Subsys for pain other than break through cancer pain.

124.    Defendants' and their co-conspirators engaged in numerous overt and predicate fraudulent racketeering acts in furtherance of the conspiracy, including material misrepresentations and omissions designed to defraud Plaintiffs and the Class.

125.    The nature of Defendants' and their co-conspirators' acts, material misrepresentations, and omissions in furtherance of the conspiracy give rise to an inference that they not only agreed to the objective of an 18 U.S.C. § 1962(d) violation of RICO by conspiring to violate 18 U.S.C. § l962(c), but they were aware that their ongoing fraudulent and extortionate acts have been and are part of an overall pattern of racketeering activity.

126.    As a direct and proximate result of Defendants' overt acts and predicate acts in furtherance of violating 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. l962(c), Plaintiffs and the Class have been and are continuing to be injured in their business or property as set forth more fully above.

127.    Defendants sought to and have engaged in the commission of (and may continue to commit) overt acts, including the following unlawful racketeering predicate acts:

u.  Multiple instances of mail and wire fraud violations of 18 U.S.C. §§ 1341 and 1342;

v.  Multiple instances of mail fraud violation of 18 U.S.C. §§ 1341 and 1346; and

w.  Multiple instances of unlawful activity in violation of 18 U.S.C. § 1952.

128.    Plaintiffs and members of the Class have been injured in their property by reason of these violations in that Plaintiffs and members of the Class have paid hundreds of millions of dollars for Subsys that they would not have had Defendants not conspired to violate 18 U.S.C. § 1962(c).

129.    Injuries suffered by Plaintiffs and members of the Class were directly and proximately caused by Defendants' racketeering activity as described above.

130.    Patients, physicians, PBMs, and TPPs, including Plaintiffs and the Class, directly relied on the Defendants' and the Enterprise's racketeering activities. Plaintiffs and Class members relied on the representations as to patients' diagnoses and qualifications for authorization for use of Subsys. Because Defendants misrepresented their background/employment, falsified the conditions for which the patients being prescribed Subsys were being treated and controlled communications with TPPs regarding approval for those prescriptions, all Class members were obligated to rely on Defendants' and the Enterprise's representations. Further, Defendants perpetuated this reliance by taking the steps itemized above

to suppress the truthful information about the patients' condition that would have caused

members of the Class to deny approval for the Subsys prescriptions.

131.    By virtue of these violations of 18 U.S.C. § 1962(d), Defendants are liable to

Plaintiffs and the Class for three times the damages Plaintiffs and the Class have sustained, plus

the cost of this suit, including reasonable attorney's fees.

132.    By reason of the foregoing, and as a direct and proximate result of Defendants'

fraudulent misrepresentations, Plaintiffs and the Class have suffered damages estimated to be in

the hundreds of millions of dollars.  Plaintiffs and the Class members are entitled to

compensatory damages, equitable relief, punitive damages, costs and reasonable attorneys' fees.

**COUNT THREE:**
**CIVIL CONSPIRACY**

133.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth

herein and further alleges as follows.

134.    Defendants conspired with prescribers to unlawfully, fraudulently, and deceitfully

procure funds from Plaintiffs and members of the Class for non-reimbursable Subsys through

violations of the various federal and state statutes and common laws identified herein.

135.    On information and belief, Insys executives directed Insys employees to increase

reimbursements received for Subsys prescriptions by (1) providing illegal kickbacks to

prescribers to induce them to write more Subys prescriptions; (2) illegally marketing Subys to

prescribers for off-label use; and (3) creating a reimbursement unit that worked with prescribers

to fraudulently obtain authorizations for non-reimbursable Subys prescriptions.

136.    To achieve and accomplish the unlawful acts and objectives, Insys and the

prescribers conspired and agreed to have Insys fraudulently call in prior authorization requests

on behalf of prescribers and patients to obtain reimbursement authorization for non-reimbursable

32

Subsys prescriptions. Insys Reimbursement Center employees represented or implied that they worked for the prescriber during this authorization process. Such authorizations were fraudulently obtained through misrepresentations that patients had breakthrough cancer pain and/or were opioid tolerant. Insys and the prescribers understood that this deceptive and unlawful arrangement would be mutually beneficial: Insys would be able to increase revenues and profits, and prescribers were paid illegal kickbacks.

137.    The overt acts taken to further and perpetuate this unlawful scheme are described in this complaint and include: (a) Insys's payment of illegal kickbacks to prescribers in the form of "speaker fees" and other remuneration including meals in exchange for increased Subsys prescriptions; (b) Insys's kickbacks to prescribers in the form of free administrative services for obtaining prior authorizations for Subsys prescriptions in exchange for increased Subsys prescriptions; (c) Insys employees fraudulently calling in prior authorization requests, misrepresenting that they worked for the prescribers; and (d) Insys employees fraudulently misrepresenting whether patients for whom they were seeking prior authorizations had breakthrough cancer pain and/or were opioid dependent during the prior authorization process.

138.    The concerted actions of Defendants and the prescribers have caused Plaintiffs and the Class to be damaged in an amount to be determined at trial.

139.    Defendants and the prescribers engaged in aggravated and outrageous conduct with an intent to injure or defraud, or deliberately interfere with the rights of Plaintiffs and the Class, consciously disregarding the unjustifiably substantial risk of significant harm to them.

140.    The concerted action has caused Plaintiffs and the Class to be damaged by paying substantial reimbursements for Subsys prescriptions that were fraudulent and not reimbursable. By virtue of the foregoing, Plaintiffs and the Class are entitled to an award of compensatory and

punitive damages together with interest and costs, and any other relief the Court deems just and proper.

## COUNT FOUR:
## VIOLATION OF ALASKA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT ("ALASKA UTPCPA"), ALASKA STAT. § 45.50.471, *ET SEQ.*

141.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

142.     This claim is brought by Plaintiffs pursuant to the Alaska UTPCA, Alaska Stat. § 45.50.471, *et seq.*

143.     Alaska Stat. § 45.50.471(b) provides that various "unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce" are unlawful, including, but not limited to: "(4) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have"; "(8) advertising goods or services with intent not to sell them as advertised"; "(11) engaging in any other conduct creating a likelihood of confusion or of misunderstanding and that misleads, deceives, or damages a buyer or a competitor in connection with the sale or advertisement of goods or services"; and "(12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived, or damaged."[17]

---

[17] ALASKA STAT. § 45.50.471(b) (West 2018).

144.    Defendants engaged in trade and commerce by marketing, selling, and distributing Subsys for off-label use.

145.    Defendants encouraged Insys sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys prescriptions. These and other actions constitute violations of numerous sections of the Alaska UTPCPA as detailed above.

146.    The foregoing acts, omissions, and practices directly, foreseeably, and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies expended for Subsys prescriptions that they would not have paid but for Insys's conduct.

147.    Under Alaska Stat. § 45.50.531(a), Plaintiffs, on behalf of themselves and Class members, seek from Defendants monetary relief measured as the greater of (a) three times the actual damages in an amount to be determined at trial and (b) $500 for each plaintiff. Plaintiffs, on behalf of themselves and Class members, also seek any other relief that the Court may deem necessary and proper.

148.    Under Alaska Stat. § 45.50.537(a), Plaintiffs seek full reasonable attorneys' fees.

## COUNT FIVE:
## VIOLATION OF ARIZONA CONSUMER FRAUD ACT ("ARIZONA CFA"), ARIZ/ REV. STAT. ANN. § 44-1521, *ET SEQ.*

149.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

150.    This claim is brought by Plaintiffs pursuant to the Arizona CFA, Ariz. Rev. Stat. Ann. § 44-1521, e*t seq*.

151.    Ariz. Rev. Stat. Ann. § 44-1522(A) provides that "[t]he act, use or employment by any person of any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice."[18]

152.    Defendants engaged in the sale and advertisement of merchandise within the meaning of the Arizona CFA by marketing, selling, and distributing Subsys.[19]

153.    Defendants, Plaintiffs, and Class members are "person[s]" within the meaning of Ariz. Rev. Stat. § 44-1521(6).

154.    Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys

---

[18] ARIZ. REV. STAT. ANN. § 44-1522(A.) (2013).

[19] ARIZ. REV. STAT. ANN. § 44-1521(1), (5), and (7) (2013).

prescriptions. These and other actions undertaken by Defendants constitute violations of the Arizona CFA.

155.     The foregoing acts, omissions, and practices directly, foreseeably, and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies expended for Subsys prescriptions that they would not have paid but for Insys's conduct.

156.     Under the Arizona CFA, Plaintiffs, on behalf of themselves and Class members, seek monetary relief against each Defendant in an amount to be determined at trial.[20] The Plaintiffs also seek punitive damages because the Defendants have engaged in conduct that is wanton, reckless, or shows spite or ill-will,[21] and/or acted with reckless indifference to the interests of others.[22]

157.     Plaintiffs also seek reasonable attorneys' fees and expenses.

## COUNT SIX:
## VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT ("CALIFORNIA CLRA"), CAL. CIV. CODE § 1750, *ET SEQ.*

158.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

159.     This claim is brought by Plaintiffs pursuant to the California CLRA, Cal. Civ. Code § 1750, *et seq.*

160.     Cal. Civ. Code § 1770(a) prohibits "unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of

---

[20] ARIZ. REV. STAT. ANN. § 44-1528 (2013).

[21] *See Sellinger v. Freeway Mobile Home Sales, Inc*., 110 Ariz. 573, 577 (1974); *Lufty v. R. D. Roper & Sons Motor Co*., 57 Ariz. 495, 115 P.2d 161 (1941).

[22] *See Sellinger*, 110 Ariz. at 577; *McNelis v. Bruce*, 90 Ariz. 261 (1961).

goods or services to any consumer," including, but not limited to "(2) [m]isrepresenting the source, sponsorship, approval, or certification of goods or services;" "(5) [r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;" and "(9) [a]dvertising goods or services with intent not to sell them as advertised."[23]

161.    Plaintiffs, Class members, and Defendants are "person[s]" as defined in Cal. Civ. Code § 1761(c).

162.    Plaintiffs are sending demand letters notifying Defendants of such claims for relief pursuant to Cal. Civ. Code § 1782(a) and will amend this complaint following such notice and specifically reserve the right to seek damages.

163.    Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys prescriptions.

164.    The foregoing acts, omissions, and practices directly, foreseeably, and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in

---

[23] CAL. CIV. CODE § 1770(a) (West 2018).

the form of, *inter alia*, monies expended for Subsys prescriptions that they would not have paid but for Insys's conduct.

## COUNT SEVEN:
## VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW ("CALIFORNIA UCL"), CAL. BUS. & PROF. CODE § 17200, *ET SEQ.*

165.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

166.    This claim is brought by Plaintiffs pursuant to the California UCL, Cal. Bus. & Prof. Code § 17200, e*t seq.*

167.    Cal. Bus. & Prof. Code § 17200 deems unfair competition to mean "any unlawful, unfair, or fraudulent business acts or practices."[24]

168.    Plaintiffs, Class members, and Defendants are "person[s]" as defined in Cal. Bus. & Prof. Code § 17201.

169.    Defendants violated the "unlawful" prong of § 17200 by their violations of the California CLRA, as described above.

170.    Defendants also violated the "fraudulent" prong of § 17200 through their fraudulent activities as described throughout this complaint.

171.    In addition, the Defendants violated the "unfair" prong of § 17200[25] because the Defendants' acts and practices described in this complaint caused Defendants to profit at the expense of Class members.

172.    Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain

---

[24] Cal. Bus. & Prof. Code § 17200 (West 2018).

[25] *See Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) ("A business act or practice may violate the [UCL] if it is either unlawful, unfair, or fraudulent. Each of these three adjectives captures a separate and distinct theory of liability." (internal quotation marks and citation omitted)).

to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys prescriptions. These and other actions constitute unlawful, unfair, and fraudulent acts under the California UCL.

173.    Defendants' actions, as set forth above, occurred within the conduct of their business and in trade or commerce.

174.    The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies expended for Subsys prescriptions that they would not have paid but for Insys's conduct.

175.    Pursuant to Cal. Bus. & Prof. Code § 17203, the Court may "restore to any person in interest any money or property, real or personal, which may have been acquired by means of" a violation of the statute.

176.    Plaintiffs request that this Court enter such orders or judgments as may be necessary, including: a declaratory judgment that each Defendant has violated the UCL; an order restoring to the Plaintiffs any money lost as result of each Defendant's unfair, unlawful, and/or fraudulent trade practices, including restitution and disgorgement of any profits Defendants received as a result of their unfair, unlawful, or fraudulent practices, as provided in Cal. Bus. & Prof. Code § 17082, and for any other relief as may be just and proper.

177.     In addition, under Cal. Civ. Proc. Code § 1021.5, the Court "may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement…are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

### COUNT EIGHT:
### VIOLATION OF COLORADO CONSUMER PROTECTION ACT ("COLORADO CPA"), COLO. REV. STAT. § 6-1-101, *ET SEQ.*

178.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

179.     This claim is brought by Plaintiffs pursuant to the Colorado CPA, Colo. Rev. Stat. § 6-1-101, *et seq*.

180.     Colo. Rev. Stat. § 6-1-105(1) proscribes deceptive trade practices, including but not limited to: "(b) [k]nowingly mak[ing] a false representation as to the source, sponsorship, approval, or certification of goods, services, or property;" "(i) [a]dvertis[ing] goods, services, or property with intent not to sell them as advertised;" "(u) fail[ing] to disclose material information concerning goods, services, or property which information was known at the time of an advertisement or sale if such failure to disclose such information was intended to induce the consumer to enter into a transaction."[26]

181.     Defendants, Plaintiffs, and Class members are "person[s]" as defined in Colo. Rev. Stat. § 6-1-102(6).

---

[26] COLO. REV. STAT. § 6-1-105(1) (West 2018).

182.    Each Defendant's conduct, as set forth above, occurred in the conduct or trade or commerce.

183.    Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys prescriptions. These and other actions constituted violations of the Colorado CPA.

184.    The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies expended for Subsys prescriptions that they would not have paid but for Insys's conduct.

185.    Plaintiffs, on behalf of themselves and Class members, seek monetary relief and attorneys' fees as provided in Colo. Rev. Stat. § 6-1-113. Plaintiffs also seek punitive damages because defendants acted wantonly in causing Plaintiffs' and Class members' injuries or with such a conscious indifference to the consequences that malice may be inferred.

**COUNT NINE:**
**VIOLATION OF CONNECTICUT UNFAIR TRADE PRACTICES ACT**
**("CONNECTICUT UTPA"), CONN. GEN. STAT. § 42-110A, *ET SEQ.***

186.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

187.    This claim is brought by Plaintiffs pursuant to the Connecticut UTPA, Conn. Gen. Stat. § 42-110a, *et seq*.

188.    Conn. Gen. Stat. § 42-110b(a) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[27]

189.    Plaintiffs, Class members, and Defendants are "person[s]" within the meaning of Conn. Gen. Stat. § 42-110a(3).

190.    Defendants' challenged conduct occurred in "trade" or "commerce" within the meaning of Conn. Gen. Stat. § 42-110a(4).

191.    Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys prescriptions. These and other actions constitute violations of numerous sections of the Connecticut UTPA as detailed above.

192.    The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies expended for Subsys prescriptions that they would not have paid but for Insys's conduct.

---

[27] CONN. GEN. STAT. § 42-110b (West 2018).

193.     Defendants acted with reckless indifference to another's rights or wanton or intentional violation of another's rights and otherwise engaged in conduct amounting to a particularly aggravated, deliberate disregard for the rights and safety of others. Therefore, punitive damages are warranted.

194.     Under Conn. Gen. Stat. § 42-110g, Plaintiffs, on behalf of themselves and Class members, seek from Defendants monetary relief and punitive damages as the Court deems necessary and proper.

195.     Under Conn. Gen. Stat. § 42-110g, Plaintiffs also seek reasonable attorneys' fees.

196.     Pursuant to Conn. Gen. Stat. § 42-110g(c), Plaintiffs shall mail a copy of this Complaint to the Connecticut Attorney General and Commissioner of Consumer Protection.

## COUNT TEN:
## VIOLATION OF DELAWARE CONSUMER FRAUD ACT ("DELAWARE CFA"), DEL. CODE TIT. 6, § 2511, *ET SEQ.*

197.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

198.     This claim is brought pursuant to Delaware CFA, Del. Code Ann. tit. 6, § 2511, *et seq.*

199.      Del. Code Ann. tit. 6, § 2513 prohibits the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby."[28]

---

[28] DEL. CODE TIT. 6, § 2513 (West 2018).

200.     Plaintiffs, Class members, and Defendants are "person[s]" within the meaning of Del. Code tit. 6, § 2511(7).

201.     Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys prescriptions. These and other actions undertaken by Defendants constitute violations of numerous sections of the Delaware CFA.

202.     The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies expended for Subsys prescriptions that they would not have paid but for Insys's conduct.

203.     Defendants' actions, as set forth above, occurred in the conduct of trade or commerce.

204.     Plaintiffs seek damages under Del. Code tit. 6, § 2525 of the Delaware CFA for injury resulting from the direct and natural consequences of each Defendant's unlawful conduct.

205.     Defendants engaged in gross, oppressive, or aggravated conduct justifying the imposition of punitive damages.

206.     Plaintiffs, on behalf of themselves and Class members, seek from Defendants punitive damages and attorneys' fees and expenses as the Court deems just and proper.

**COUNT ELEVEN:**
**VIOLATION OF DISTRICT OF COLUMBIA CONSUMER PROTECTION**
**PROCEDURES ACT ("D.C. CPPA"), D.C. CODE § 28-3901, *ET SEQ.***

207.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

herein.

208.    This claim is brought pursuant to the D.C. CPPA, D.C. Code § 28-3901, *et seq.*

209.    D.C. Code § 28-3904 states: "it shall be a violation of this chapter, whether or not

any consumer is in fact misled, deceived or damaged thereby, for any person to," among other

things: (b) "represent that the person has a sponsorship, approval, status, affiliation, certification,

or connection that the person does not have"; (e) "misrepresent as to a material fact which has a

tendency to mislead"; (f) "fail to state a material fact if such failure tends to mislead"; (f-1)"[u]se

innuendo or ambiguity as to a material fact, which has a tendency to mislead"; or (h) "advertise

or offer goods or services without the intent to sell them or without the intent to sell them as

advertised or offered."[29]

210.    Plaintiffs, Class members, and Defendants are "person[s]" under D.C. Code § 28-

3901(a)(1).

211.    Defendants' actions as set forth in this Complaint constitute "trade practices"

under D.C. Code § 28-3901.

212.    Insys encouraged its sales representatives to promote off-label use of Subsys by

targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain

to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the

drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker

Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and

---

[29] D.C. CODE § 28-3904 (West 2018).

established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent

scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys

prescriptions. These and other actions constitute violations of numerous sections of the D.C.

CPPA.

213.    The foregoing acts, omissions and practices directly, foreseeably and proximately

caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of,

*inter alia*, monies expended for Subsys prescriptions that they would not have paid but for

Insys's conduct.

214.    Plaintiffs and Class members are entitled to recover treble damages or $1,500 per

violation, whichever is greater, punitive damages due to Defendants' flagrant and dangerous

misrepresentations, reasonable attorneys' fees, and any other relief the Court deems proper under

D.C. Code § 28-3905.

## COUNT TWELVE:
## VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT ("FDUTPA"), FLA. STAT. § 501.201, *ET SEQ.*

215.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

herein.

216.    This claim is brought pursuant to the FDUPTA, Fla. Stat. § 501.201, *et seq.*

217.    Fla. Stat. § 501.204(1) generally prohibits "unfair methods of competition,

unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any

trade or commerce."[30]

218.    The primary policy of the Florida DUTPA is "[t]o protect the consuming public

and legitimate business enterprises from those who engage in unfair methods of competition, or

---

[30] FLA. STAT. § 501.204(1) (West 2018).

unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."[31]

219.    Plaintiffs and Class members are "consumers"[32] under Florida Stat. § 501.203(6), and have standing to bring claims under Florida Stat. § 501.211.

220.    Defendants' unlawful conduct substantially affected Florida's trade and commerce.

221.    Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys prescriptions. These and other actions constitute prohibited actions under the FDUTPA.

222.    The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies expended for Subsys prescriptions that they would not have paid but for Insys's conduct.

223.    Pursuant to Florida Stat. §§ 501.211 and 501.2105, Plaintiffs, on behalf of themselves and Class members seek monetary relief, attorneys' fees, and costs.

## COUNT THIRTEEN:
## VIOLATION OF IDAHO CONSUMER PROTECTION ACT ("IDAHO CPA"), IDAHO CODE § 48-601, *ET SEQ.*

---

[31] FLA. STAT. § 501.202(2) (West 2018).

[32] *See Tampa Bay Storm, Inc. v. Arena Football League, Inc.*, 1998 WL 182418 (M.D. Fla. Mar.19, 1998).

224.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

225.     This claim is brought pursuant to the Idaho CPA, Idaho Code § 48-601, *et seq*.

226.     Idaho Code § 48-603 prohibits a person from engaging in a "deceptive trade practice," including, but not limited to, "(2) [c]aus[ing] likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;" "(5) [r]epresent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" "(9) [a]dvertis[ing] goods or services with intent not to sell them as advertised;" and "(17) [e]ngag[ing] in any act or practice which is otherwise misleading, false, or deceptive to the consumer."[33]

227.     Plaintiffs, Class members, and Defendants are "person[s]" as defined in Idaho Code § 48-602(1).

228.     The Defendants' acts or practices as set forth herein occurred in the conduct of "trade" or "commerce" under Idaho Code Ann. § 48-601(2).

229.     Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent

---

[33] IDAHO CODE ANN. § 48-603 (WEST 2018).

scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys

prescriptions. These acts or practices as set forth above constitute both "unfair" and "deceptive"

acts under the Idaho CPA. These and other actions constitute violations of numerous sections of

the Idaho CPA.

230.     The foregoing acts, omissions and practices directly, foreseeably and proximately

caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of,

*inter alia*, monies expended for Subsys prescriptions that they would not have paid but for

Insys's conduct.

231.     Under Idaho Code § 48-608, Plaintiffs seek monetary relief against each

Defendant measured as the greater of (a) actual damages in an amount to be determined at trial

and (b) statutory damages in the amount of $1,000 for each Plaintiff.

232.     Plaintiffs also seek punitive damages against Defendants because each

Defendant's conduct evidences an extreme deviation from reasonable standards. They concealed

facts that only they knew, The Defendants' unlawful conduct constitutes malice, oppression and

fraud warranting punitive damages.

## COUNT FOURTEEN:
## VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT ("ILLINOIS CFA"), 815 ILL. COMP. STAT. 505/1, *ET. SEQ.*

233.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

herein.

234.     This claim is brought by Plaintiffs pursuant to the Illinois CFA, 815 Ill. Comp.

Stat. 505/1, *et seq.*

235.     815 Ill. Comp. Stat. 505/2 proscribes "[u]nfair methods of competition and unfair

or deceptive acts or practices including but not limited to the use or employment of any

deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact."[34]

236.    Plaintiffs, Class members, and Defendants are "person[s]" as defined in 815 Ill. Comp. Stat. 505/1.

237.    Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys prescriptions. These and other actions were unfair, unconscionable, and deceptive within the conduct of commerce in the State of Illinois. Defendants' conduct misled, withheld material facts, and resulted in material misrepresentations to Plaintiffs and Class members.

238.    The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies expended for Subsys prescriptions that they would not have paid but for Insys's conduct.

239.    Plaintiffs, on behalf of themselves and Class members, seek from Defendants monetary and reasonable attorneys' fees and costs pursuant to 815 Ill. Comp. Stat. 505/10a due to Defendants' violations of the statute. Pursuant to this provision of the code, the Plaintiffs also

---

[34] 815 ILL. COMP. STAT. 505/2 (West 2018).

seek punitive damages because Defendants each acted with fraud and/or malice and/or was grossly negligent.

240.    Pursuant to 815 Ill. Comp. Stat. 505/10a(d), Plaintiffs shall mail a copy of this Complaint to the Illinois Attorney General.

## COUNT FIFTEEN:
## VIOLATION OF INDIANA DECEPTIVE CONSUMER SALES ACT ("INDIANA DCSA"), IND. CODE § 24-5-0.5-1, *ET SEQ.*

241.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

242.    This claim is brought by Plaintiffs pursuant to the Indiana DCSA, Ind. Code § 24-5-0.5.1, *et seq.*

243.    Ind. Code §§ 24-5-0.5-3(a) and (b) proscribe "unfair, abusive, or deceptive act[s], omission[s], or practice[s] in connection with a consumer transaction" including, but not limited to representing "(b)(1) [t]hat such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or reasonably should know it does not have;" "(7) [t]hat the supplier has a sponsorship, approval, or affiliation in such consumer transaction the supplier does not have, and which the supplier knows or should reasonably know that the supplier does not have;" and "(11) [t]hat the consumer will be able to purchase the subject of the consumer transaction as advertised by the supplier, if the supplier does not intend to sell it."[35]

244.    Plaintiffs and Class members are "person[s]" under Ind. Code § 24-5-0.5-2(a)(2), and Defendants are "supplier[s]" under Ind. Code § 24-5-0.5-2(a)(3).

---

[35] IND. CODE § 24-5-0.5-3(b) (2018).

245.    The Defendants' acts or practices as set forth herein took place in connection with "consumer transaction[s]" under Ind. Code § 24-5-0.5-2(a)(1).

246.    Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys prescriptions. These and other actions were "unfair," "abusive," and "deceptive" in connection with consumer transactions in the State of Indiana.  Defendants' conduct misled, withheld material facts, and resulted in material misrepresentations to Plaintiffs and Class members in violation of the Indiana DCSA.

247.    The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies expended for Subsys prescriptions that they would not have paid but for Insys's conduct.

248.    Plaintiffs, on behalf of themselves and Class members, seek from Defendants actual damages or $500, whichever is greater; statutory damages equaling a trebled amount of actual damages or $1,000 for each Plaintiff, whichever is greater due to Defendants' willful deception; and reasonable attorney fees and costs pursuant to Ind. Code § 24-5-0.5-4(a).

249.    Plaintiffs are sending demand letters notifying Defendants of such claims for relief pursuant to Ind. Code § 24-5-0.5-5(a) and will amend this complaint following such notice.

**COUNT SIXTEEN:**
**VIOLATION OF KENTUCKY CONSUMER PROTECTION ACT ("KENTUCKY CPA"), KY. REV. STAT. ANN. § 367.110, *ET SEQ.***

250.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

251.    This claim is brought by Plaintiffs pursuant to the Kentucky CPA, Ky. Rev. Stat. Ann. § 367.110, *et seq*.

252.    Ky. Rev. Stat. Ann. § 367.170 makes unlawful "[u]nfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce."[36]

253.    Plaintiffs, Class members, and Defendants are all "person[s]" as defined in Ky. Rev. Stat. Ann. § 367.110(2).

254.    The Defendants' acts or practices as set forth herein occurred in the conduct of "trade" or "commerce" under Ky. Rev. Stat. Ann. § 367.110(2).

255.    Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys prescriptions. These and other actions by Defendants constitute "unfair," "false," "misleading," and "deceptive" acts in violation of the Kentucky CPA.

---

[36] KY. REV. STAT. ANN. § 367.170(1) (West 2018).

256.    The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies expended for Subsys prescriptions that they would not have paid but for Insys's conduct.

257.    Pursuant to Ky. Rev. Stat. §§ 367.220(1) and (3), Plaintiffs, on behalf of themselves and Class members, seek actual damages, punitive damages, and reasonable attorney's fees and costs.

## COUNT SEVENTEEN:
## VIOLATION OF MAINE UNFAIR TRADE PRACTICES ACT ("MAINE UTPA"), ME. STAT. TIT. 5 § 2015-A, *ET SEQ.*

258.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

259.    This claim is brought by Plaintiffs pursuant to the Maine UTPA, Me. Stat. tit. 5 § 205-A, *et seq*.

260.    The Maine UTPA makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[37]

261.    Plaintiffs, Class members, and Defendants are all "person[s]" as defined in Me. Stat. tit. 5 § 206(2).

262.    The Defendants' acts or practices as set forth herein occurred in the conduct of "trade" and "commerce" under Me. Stat. tit. 5 § 206(3).

263.    Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the

---

[37] ME. REV. STAT. TIT. 5, § 207 (West 2018).

drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker

Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and

established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent

scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys

prescriptions. These and other actions by Defendants constituted "unfair methods of

competition" and "unfair" and "deceptive" practices in violation of the Maine UTPA.

264.    The foregoing acts, omissions and practices directly, foreseeably and proximately

caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of,

*inter alia*, monies expended for Subsys prescriptions that they would not have paid but for

Insys's conduct.

265.    Plaintiffs, on behalf of themselves and Class Members, seek all damages and

relief as well as reasonable attorneys' fees and costs to which they are entitled pursuant to Me.

Stat. tit. 5, § 213.

266.    Plaintiffs will send demand letters notifying Defendants of such claims for relief

pursuant to Me. Stat. tit. 5, § 213 and will amend this complaint following such notice.

### COUNT EIGHTEEN:
### VIOLATION OF MARYLAND CONSUMER PROTECTION ACT ("MARYLAND CPA"), MD. CODE ANN. COM. LAW CODE § 13-101, *ET SEQ.*

267.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

herein.

268.    This claim is brought by Plaintiffs pursuant to the Maryland CPA, Md. Code Ann.

Com. Law §13-101, *et seq.*

269.    Md. Code Ann. Com. Law §13-301, provides that a person may not engage in any

unfair or deceptive trade practice, including but not limited to, "(1) [f]alse, falsely disparaging, or

misleading oral or written statement, visual description, or other representation of any kind

which has the capacity, tendency, or effect of deceiving or misleading consumers;" "(2) [a r]epresentation that (i) [c]onsumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have; (ii) [a] merchant has a sponsorship, approval, status, affiliation, or connection which he does not have;" "(3) [f]ailure to state a material fact if the failure deceives or tends to deceive;" and "(11) [u]se of any plan or scheme in soliciting sales or services over the telephone that misrepresents the solicitor's true status or mission."[38]

270.    Plaintiffs, Class members, and Defendants are all "person[s]" as defined in Md. Code Ann. Com. Law § 13-101(h).

271.    Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys prescriptions. These and other actions by Defendants constituted "unfair" and "deceptive" trade practices in violation of the Maryland CPA.

272.    The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies expended for Subsys prescriptions that they would not have paid but for Insys's conduct.

---

[38] MD. CODE ANN.COM. LAW § 13-301 (WEST 2018).

273.     Pursuant to Md. Code, Com. Law § 13-408, Plaintiffs, on behalf of themselves and Class members, seek actual damages, attorneys' fees, and any other just and proper relief available under the Maryland CPA.

**COUNT NINETEEN:**
**VIOLATION OF MICHIGAN CONSUMER PROTECTION ACT ("MICHIGAN CPA"), MICH. COMP. LAWS. § 445.901, *ET SEQ.***

274.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

275.     This claim is brought by Plaintiffs pursuant to the Michigan CPA, Mich. Comp. Laws § 445.901, *et seq.*

276.     The Michigan CPA, Mich. Comp. Laws § 445.903, prohibits certain "unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce," including "(a) [c]ausing a probability of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;" "(c) [r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has sponsorship, approval, status, affiliation, or connection that he or she does not have;" "(g) [a]dvertising or representing goods or services with intent not to dispose of those goods or services as advertised or represented;" "(s) [f]ailing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) [m]aking a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) [f]ailing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner."[39]

---

[39] MICH. COMP. LAWS ANN. § 445.903 (West 2018).

277.    Plaintiffs, Class members, and Defendants are "person[s]" as defined in Mich. Comp. Laws § 445.902(1)(d) and (g).

278.    Defendants engaged in "[t]rade or [c]ommerce" as defined in Mich. Comp. Laws § 445.902(g).

279.    Defendants conduct, as described in this Complaint, constitutes "deceptive" and "unfair" acts or practices in violation of the Michigan CPA.

280.    Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys prescriptions. These and other actions by Defendants constituted unfair, unconscionable, and deceptive trade business practices in clear violation of the Michigan CPA.

281.    The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies expended for Subsys prescriptions that they would not have paid but for Insys's conduct.

282.    Plaintiffs, on behalf of themselves and Class members, seek monetary relief against each Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for each Plaintiff or Class

member, reasonable attorneys' fees and costs, and any other just and proper relief available under Mich. Comp. Laws § 445.911.

283.    Plaintiffs also seek punitive damages because each Defendant carried out despicable conduct with willful and conscious disregard of the rights and safety of others. Defendants concocted and executed a fraudulent scheme to steal money from Plaintiffs and Class members at the expense of medical patients' well-being. Defendants' conduct constitutes malice, oppression, and fraud, warranting punitive damages.

## COUNT TWENTY:
## VIOLATION OF MINNESOTA PREVENTION OF CONSUMER FRAUD ACT, ("MINNESOTA PCFA") MINN. STAT. § 325F.68, *ET SEQ.*

284.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

285.    This claim is brought by Plaintiffs pursuant to the Minnesota PCFA, Minn. Stat. § 325F.68, *et seq.*

286.    Minn. Stat.§ 325F.69 prohibits "[t]he act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby."[40]

287.    Each purchase of Subsys constitutes "merchandise" as defined in Minn. Stat. § 325F.69(2).

288.    Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the

---

[40] MINN. STAT. ANN. § 325F.69 (West 2018).

drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker

Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and

established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent

scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys

prescriptions. These and other actions by Defendants constituted fraudulent, misrepresentative,

and deceptive trade business practices in violation of the Minnesota PCFA.

289.    The foregoing acts, omissions and practices directly, foreseeably and proximately

caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of,

*inter alia*, monies expended for Subsys prescriptions that they would not have paid but for

Insys's conduct.

290.    Pursuant to Minn. Stat. § 8.31(3a), Plaintiffs seek actual damages, attorneys' fees,

and any other just and proper relief available under the Minnesota PCFA.

291.    Plaintiffs also seek punitive damages under Minn. Stat. § 549.20(1)(a) given the

clear and convincing evidence that Defendants' acts showed deliberate disregard for the rights or

safety of others in its illicit marketing and selling of Subsys.

### COUNT TWENTY-ONE:
### VIOLATION OF MISSOURI MERCHANDISING PRACTICES ACT ("MISSOURI MPA"), MO. REV. STAT. § 407.010, *ET SEQ.*

292.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

herein.

293.    This claim is brought by Plaintiffs pursuant to the Missouri MPA, Mo. Rev. Stat.

§ 407.010, *et seq.*

294.    The Missouri MPA makes unlawful the "act, use or employment by any person of

any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the

concealment, suppression, or omission of any material fact in connection with the sale or

advertisement of any merchandise in trade or commerce . . . ."[41]

295.    Plaintiffs, Class members, and Defendants are "person[s]" as defined in Mo. Rev.

Stat. § 407.010(5).

296.    Defendants engaged in "[t]rade or [c]ommerce" as defined in Mo. Rev. Stat. §

407.010(7).

297.    Insys encouraged its sales representatives to promote off-label use of Subsys by

targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain

to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the

drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker

Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and

established and used the Insurance Reimbursement Center to help carry out Defendants'

fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for

Subsys prescriptions.  These and other actions constitute "deception, fraud, false pretense[s],

false promise[s], misrepresentation[s], and unfair practice[s]" in violation of the Missouri MPA.

298.    The foregoing acts, omissions and practices directly, foreseeably and proximately

caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of,

*inter alia*, monies expended for Subsys prescriptions that they would not have paid but for

Insys's conduct.

299.    Plaintiffs, on behalf of themselves and Class members, seek actual damages,

punitive damages, costs of Court, reasonable attorneys' fees and expenses, and any other just and

proper relief pursuant to Mo. Rev. Stat § 407.025.

---

[41] MO. REV. STAT. § 407.020(1) (West 2018).

## COUNT TWENTY-TWO:
## VIOLATION OF NEBRASKA CONSUMER PROTECTION ACT ("NEBRASKA CPA"), NEB. REV. STAT. § 59-1601, *ET SEQ.*

300.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

301.    This claim is brought by Plaintiffs pursuant to the Nebraska CPA, Neb. Rev. Stat. § 59-1601, *et seq.*

302.    Neb. Rev. Stat. § 59-1602 prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."[42]

303.    Plaintiffs, Class members, and Defendants are "person[s]" as defined in Neb. Rev. Stat. § 59-1601(1).

304.    Defendants' actions discussed in this Complaint occurred in "trade and commerce" within, and affecting, the State of Nebraska as is required under Neb. Rev. Stat. § 59-1601(2).

305.    Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys prescriptions. These and other actions constitute unfair and deceptive trade practices in violation of the Nebraska CPA.

---

[42] NEB. REV. STAT. ANN. § 59-1602 (West 2018).

306.     The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies expended for Subsys prescriptions that they would not have paid but for Insys's conduct.

307.     Plaintiffs, on behalf of themselves and Class members, seek actual damages, enhanced damages up to $1,000 per Class member, costs of Court, reasonable attorneys' fees and expenses, and any other just and proper relief available under Neb. Rev. Stat. § 59-1609.

## COUNT TWENTY-THREE:
## VIOLATION OF NEVADA DECEPTIVE TRADE PRACTICES ACT ("NEVADA DTPA"), NEV. REV. STAT. § 598.0903, *ET SEQ.*

308.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

309.     This claim is brought by Plaintiffs pursuant to the Nevada DTPA, Nev. Rev. Stat. § 598.0903, *et seq.*

310.     Nev. Rev. Stat. § 598.0915 proscribes "deceptive trade practices" in the course of one's business or occupation, including "(2) [k]nowingly mak[ing] a false representation as to the source, sponsorship, approval or certification of goods or services for sale or lease;" "(3) [k]nowingly mak[ing] a false representation as to affiliation, connection, association with or certification by another person;" "(5) [k]nowingly mak[ing] a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith;" "(9) [a]dvertis[ing] goods or services with intent not to sell or lease them as advertised;" and "(15) [k]nowingly mak[ing] any other false representation in a transaction."[43]

---

[43] NEV. REV. STAT. § 598.0915 (West 2018).

311.    The Nevada DTPA also finds the following to be "deceptive trade practices:" "2. [f]ail[ing] to disclose a material fact in connection with the sale or lease of goods or services;" "3. [v]iolat[ing] a state or federal statute or regulation relating to the sale or lease of goods or services;"[44] and "1. . . . (a) [m]ak[ing] an assertion of scientific, clinical or quantifiable fact in an advertisement which would cause a reasonable person to believe that the assertion is true, unless, at the time the assertion is made, the person making it has possession of factually objective scientific, clinical or quantifiable evidence which substantiates the assertion."[45]

312.    Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys prescriptions. These and other actions constitute deceptive trade practices in violation of the Nevada DTPA.

313.    The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies expended for Subsys prescriptions that they would not have paid but for Insys's conduct.

---

[44] NEV. REV. STAT. § 598.0923 (West 2018).

[45] NEV. REV. STAT. § 598.0925 (West 2018).

314.     Plaintiffs seek, on behalf of themselves and Class members, actual damages, punitive damages, costs of Court, attorneys' fees and expenses, and all other appropriate remedies under Nev. Rev. Stat. § 41.600.

## COUNT TWENTY-FOUR:
## VIOLATION OF NEW HAMPSHIRE CONSUMER PROTECTION ACT ("NEW HAMPSHIRE CPA"), N.H. REV. STAT. § 358-A:1, *ET SEQ.*

315.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

316.     This claim is brought by Plaintiffs pursuant to the New Hampshire CPA, N.H. Rev. Stat. § 358-A:1, *et seq.*

317.     New Hampshire CPA, N.H. Rev. Stat. § 358-A:2 prohibits a person, in the conduct of any trade or commerce, from "using any unfair or deceptive act or practice," including, but not limited to: "II. [c]ausing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;" "III. [c]ausing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another;" "V. [r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that such person does not have"; and "IX. [a]dvertising goods or services with intent not to sell them as advertised."[46]

318.     Plaintiffs, Class members, and Defendants are "person[s]" as defined in N.H. Rev. Stat. § 358-A:1.

319.     Defendants' actions set forth herein occurred in the conduct of "trade or commerce" as defined in N.H. Rev. Stat. § 358-A:1.

---

[46] N.H. REV. STAT. ANN. § 358-A:2 (2018).

320.     Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys prescriptions. These and other actions constitute "unfair" and "deceptive" trade practices as defined under the New Hampshire CPA.

321.     The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies expended for Subsys prescriptions that they would not have paid but for Insys's conduct.

322.     Plaintiffs, on behalf of themselves and Class members similarly situated, seek recovery of actual damages or $1,000 per Class member, whichever is greater; treble damages, costs and reasonable attorneys' fees, and any other just and proper relief under N.H. Rev. Stat. § 358-A:10.

## COUNT TWENTY-FIVE:
## VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT ("NEW JERSEY CFA"), N.J. STAT. § 56:8-1, *ET SEQ.*

323.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

324.     This claim is brought by Plaintiffs pursuant to the New Jersey CFA, N.J. Stat. § 56:8-1, *et seq.*

325.    N.J. Stat. § 56:8-2 makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression or omission of any material fact with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby . . . ."[47]

326.    Plaintiffs, Class members, and Defendants are "person[s]" within the meaning of N.J. Stat. § 56:8-1(d).

327.    Insys and other Defendants engaged in "sales" of "merchandise" as those terms are defined in N.J. Stat. §§ 56:8-1(c) and (d).

328.    Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys prescriptions. These and other actions are specifically outlawed by the New Jersey CFA and constituted "unconscionable commercial practice, deception, fraud, false pretense, false promise, and misrepresentation" as described in the statute.

---

[47] N.J. Stat. Ann. § 56:8-2 (West 2018).

329.    The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies expended for Subsys prescriptions that they would not have paid but for Insys's conduct.

330.    This wrongful conduct by Defendants, coupled with the damage Plaintiffs and Class members incurred, entitles them to relief under the New Jersey CFA.  N.J. Stat. § 56:8-19 provides a private right of action, with damages automatically trebled, to "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act . . . ."[48] "In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section, . . . the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit."[49] Therefore, Plaintiffs are entitled to recover treble damages, costs, punitive damages, reasonable attorneys' fees pursuant to N.J. Stat. Ann. § 56:8-19, and any other just and appropriate relief.

331.    Pursuant to N.J. Stat. Ann. § 56:8-20, Plaintiffs shall mail a copy of this Complaint to the New Jersey Attorney General.

## COUNT TWENTY-SIX:
## VIOLATION OF NEW MEXICO UNFAIR TRADE PRACTICES ACT ("NEW MEXICO UTPA"), N.M STAT. § 57-12-1, *ET SEQ.*

332.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

---

[48] N.J. STAT. ANN. § 56:8-19 (West 2018).

[49] *Id.*

333.    This claim is brought by Plaintiffs pursuant to the New Mexico UTPA, N.M. Stat. § 57-12-1, *et seq.*

334.    N.M. Stat. § 57-12-3 makes illegal "unfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce."[50] "'Unfair or deceptive trade practice' means an act specifically declared unlawful pursuant to the Unfair Practices Act, a false or misleading oral or written statement, visual description or other representation of any kind knowingly made in connection with the sale, lease, rental or loan of goods or services or in the extension of credit or in the collection of debts by a person in the regular course of the person's trade or commerce, that may, tends to or does deceive or mislead any person and includes: (2) causing confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or services; (3) causing confusion or misunderstanding as to affiliation, connection or association with or certification by another; . . . (5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that the person does not have;  . . . [and] (14) using exaggeration, innuendo or ambiguity as to a material fact or failing to state a material fact if doing so deceives or tends to deceive."[51]

335.    Plaintiffs, Class members, and Defendants are "person[s]" as defined in N.M. Stat. § 57-12-2.

336.    Defendants' actions as set forth herein occurred in the conduct of "trade or commerce" as defined under N.M. Stat. § 57-12-2.

---

[50] N.M. STAT. § 57-12-3 (West 2018).

[51] N.M. STAT. § 57-12-2 (West 2018).

337.     Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys prescriptions. These and other actions are specifically outlawed by the New Mexico UTPA as "false or misleading oral or written statement[s]."

338.     The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies expended for Subsys prescriptions that they would not have paid but for Insys's conduct.

339.     Plaintiffs, on behalf of themselves and Class members, seek recovery of: actual damages or $100, per named Plaintiff whichever is greater, discretionary treble damages, punitive damages, reasonable attorneys' fees and costs, and all other proper and just relief available under N.M. Stat. § 57-12-10.

**COUNT TWENTY-SEVEN:**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAWS, N.Y. GEN. BUS.**
**LAW §349**

340.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

341.     This claim is brought by Plaintiffs pursuant to N.Y. Gen. Bus. Law §349.

342.     N.Y. Gen. Bus. Law §349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."[52]

343.     Plaintiffs and Class members are "person[s]" within the meaning of N.Y. Gen. Bus. Law §349.

344.     Each Defendant is a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

345.     Defendants were engaged in the conduct of business, trade, or commerce within the meaning of N.Y. Gen. Bus. Law § 349.

346.     Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys prescriptions. These and other actions are deceptive acts or practices as understood in § 349 of New York's General Business Laws.

347.     The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies expended for Subsys prescriptions that they would not have paid but for Insys's conduct.

---

[52] N.Y. GEN. BUS. LAW § 349 (McKinney 2018).

348.    Because the Defendants' willful and knowing conduct caused injury to the Plaintiffs and Class members, Plaintiffs, on behalf of themselves and the Class members, seek recovery of actual damages or $50, whichever is greater, discretionary treble damages up to $1,000, punitive damages, reasonable attorneys' fees and costs, and any other just and proper relief available under N.Y. Gen. Bus. Law § 349.

**COUNT TWENTY-EIGHT:**
**VIOLATION OF NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT ("NORTH CAROLINA UDTPA"), N.C. GEN. STAT. § 75-1.1, *ET SEQ*.**

349.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

350.    This claim is brought by Plaintiffs pursuant to the North Carolina UDTPA, N.C. Gen. Stat. §75-1.1, *et seq.*

351.    N.C. Gen. Stat. §75-1.1 broadly prohibits "unfair or deceptive acts or practices in or affecting commerce."[53]

352.    Defendants engaged in "commerce" within the meaning of N.C. Gen. Stat. § 75-1.1(b).

353.    Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys

---

[53] N.C. GEN. STAT. ANN. § 75-1.1 (West 2018).

prescriptions. These and other actions constitute "unfair" and "deceptive" acts and practices in violation of the North Carolina UDTPA.

354.    The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies expended for Subsys prescriptions that they would not have paid but for Insys's conduct.

355.    Section 75-16 of the North Carolina UDTPA provides injured persons with a private right of action and automatic trebling of damages: "If any person shall be injured or the business of any person, firm or corporation shall be broken up, destroyed or injured by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person, firm or corporation so injured shall have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict."[54]

356.    Plaintiffs seek an order trebling their actual damages, costs of Court, reasonable attorney's fees and expenses, and any other just and proper relief available under N.C. Gen. Stat. §§ 75-16 and 75-16.1.

## COUNT TWENTY-NINE:
## VIOLATION OF NORTH DAKOTA UNLAWFUL SALES OR ADVERTISING PRACTICES ACT ("NORTH DAKOTA USAPA"), N.D. CENT. CODE § 51-15-01, *ET SEQ.*

357.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

---

[54] N.C. GEN. STAT. ANN. § 75-16 (West 2018).

358.     This claim is brought by Plaintiffs pursuant to the North Dakota USAPA, N.D. Cent. Code § 51-15-01, *et seq.*

359.     N.D. Cent. Code § 51-15-02 provides: "The act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby, is declared to be an unlawful practice. The act, use, or employment by any person of any act or practice, in connection with the sale or advertisement of any merchandise, which is unconscionable or which causes or is likely to cause substantial injury to a person which is not reasonably avoidable by the injured person and not outweighed by countervailing benefits to consumers or to competition, is declared to be an unlawful practice."[55]

360.     Plaintiffs, Class members, and Defendants are all "person[s]" as defined in N.D. Cent. Code § 51-15-02(4).

361.     Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys prescriptions. These and other actions constitute deceptive acts, fraud, false pretense, and misrepresentation as mentioned in the North Dakota USAPA.  Additionally, their actions are

---

[55] N.D. CENT. CODE § 51-15-02 (2018).

unconscionable under the North Dakota USAPA and caused substantial financial injury to Plaintiffs and Class members.

362.     The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies expended for Subsys prescriptions that they would not have paid but for Insys's conduct.

363.     In addition, Defendants' conduct, as described herein, constitutes "unconscionable conduct" acts in violation of the North Dakota CFA.

364.     Defendants knowingly committed the conduct described above as part of a purposeful and fraudulent scheme. As a result, under N.D. Cent. Code § 51-15-09, Defendants are liable to Plaintiffs and Class members for treble damages in amounts to be proven at trial, attorneys' fees, costs, and disbursements. Plaintiffs and Class members also seek other just and proper available relief under the North Dakota USAPA as determined by the Court.

### COUNT THIRTY:
### VIOLATION OF OHIO DECEPTIVE TRADE PRACTICES ACT ("OHIO DTPA"), OHIO REV. CODE § 4165.01, *ET SEQ.*

365.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

366.     This claim is brought by Plaintiffs pursuant to the Ohio DTPA, Ohio Rev. Code § 4165.01, *et seq.*

367.     Ohio Rev. Code § 4165.02 prohibits "deceptive trade practices," including, but not limited to "(2) caus[ing a] likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of goods or service;" "(3) caus[ing] likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by

76

another;" "(7) represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have;" and "(11) advertis[ing] goods or services with intent not to sell them as advertised."[56]

368.    Plaintiffs, Class members, and Defendants are "person[s]" as defined in Ohio Rev. Code Ann. § 4165.01(D).

369.    Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys prescriptions. These and other actions plaint constitute several deceptive trade practices acts proscribed in the Ohio DTPA.

370.    The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies expended for Subsys prescriptions that they would not have paid but for Insys's conduct.

371.    Pursuant to Ohio Rev. Code Ann. § 4165.03, Plaintiffs, on behalf of themselves and Class members, seek actual damages and attorneys' fees and costs.

### COUNT THIRTY-ONE:

---

[56] OHIO REV. CODE ANN. § 4165.02 (West 2018).

## VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT ("OKLAHOMA CPA"), OKLA. STAT. TIT. 15, §751, *ET SEQ.*

372.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

373.    This claim is brought by Plaintiffs pursuant to the Oklahoma CPA, Okla. Stat. tit. 15, § 751, *et seq.*

374.    The Oklahoma CPA declares the following, among other actions, to be unlawful: "Mak[ing] a false or misleading representation, knowingly or with reason to know, as to the source, sponsorship, approval, or certification of the subject of a consumer transaction;" "[m]ak[ing] a false or misleading representation, knowingly or with reason to know, as to affiliation, connection, association with, or certification by another"; "[m]ak[ing] a false representation, knowingly or with reason to know, as to the characteristics, ingredients, uses, benefits, alterations, or quantities of the subject of a consumer transaction or a false representation as to the sponsorship, approval, approval, status, affiliation or connection of a person therewith"; and "[a]dvertis[ing], knowingly or with reason to know, the subject of a consumer transaction with intent not to sell it as advertised."[57]

375.    More broadly, the Oklahoma CPA defines a "[d]eceptive trade practice" as "a misrepresentation, omission or other practice that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral."[58]  An "[u]nfair trade practice" is defined as "any practice which offends established public policy or if the

---

[57] OKLA. ST. ANN. tit. 15, § 753 (West 2018).

[58] OKLA. STAT. ANN. tit. 15, § 752(14) (West 2018).

practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."[59]

376.    The Oklahoma CPA further provides that if "[t]he commission of any act or practice declared to be a violation of the Consumer Protection Act" "is also found to be unconscionable," the violator is liable to the aggrieved customer for the payment of a civil penalty, recoverable in an individual action only, in a sum set by the court of not more than Two Thousand Dollars ($2,000.00) for each violation."[60] In determining whether a transaction was unconscionable, the statute recommends consideration of several factors including ". . . (4) whether the violator knew or had reason to know that the transaction he or she induced the consumer to enter into was excessively one-sided in favor of the violator."[61]

377.    Plaintiffs and Class members are "person[s]" as defined in Okla. Stat. tit. 15, § 752.

378.    Each Defendant is a "person," "corporation," or "association" within the meaning of Okla. Stat. tit. 15, §§ 751(1) and 752.

379.    Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys

---

[59] OKLA. STAT. ANN. tit. 15, § 752(15) (West 2018).

[60] OKLA. STAT. ANN. tit. 15, § 761.1 (West 2018).

[61] Id.

prescriptions. These and other actions constitute unfair and deceptive acts which caused

Plaintiffs' and Class members to purchase Subsys for patients that should not have received it.

Plaintiffs and Class members would not have authorized off-label purchases of Subsys if not for

Defendants' fraud and deception. Moreover, the systemic fraud organized by Defendants to

purposefully sell Subsys to patients that the FDA had determined should not utilize the drug

constituted unfair and unconscionable acts in violation of the Oklahoma CPA.

380.    The foregoing acts, omissions and practices directly, foreseeably and proximately

caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of,

*inter alia*, monies expended for Subsys prescriptions that they would not have paid but for

Insys's conduct.

381.    Furthermore, because Defendants' unconscionable conduct caused injury to

Plaintiffs and Class members, Plaintiffs seek recovery of actual damages, discretionary penalties

up to $2,000 per violation, and reasonable attorneys' fees under Okla. Stat. tit. 15, § 761.1.

Plaintiffs, on behalf of themselves and the Class members similarly situated, seek any other just

and proper relief available under the Oklahoma CPA, including actual damages and punitive

damages due to Defendants' egregious and unconscionable behavior.

## COUNT THIRTY-TWO:
## VIOLATION OF PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW ("PENNSYLVANIA UTPCPL"), 73 PA. CONS. STAT. § 201-1, *ET SEQ.*

382.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

herein.

383.    This claim is brought by Plaintiffs pursuant to the Pennsylvania UTPCPL, 73 Pa.

Cons. Stat. § 201-1, *et seq.*

384.    73 Pa. Cons. Stat. §§ 201-1 and 201-2 proscribe "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" including, but not limited to, "(ii) [c]ausing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;" "(iii) [c]ausing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;" "(v) [r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;" and "(ix) [a]dvertising goods or services with intent not to sell them as advertised."[62]

385.    Plaintiffs, Class members, and Defendants are "person[s]" as defined in 73 Pa. Cons. Stat. § 201-2(2).

386.    The Defendants' acts or practices as set forth herein occurred in the conduct of "trade" and "commerce" under 73 Pa. Cons. Stat. § 201-2(3).

387.    Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys prescriptions. These and other actions constitute unfair methods of competition and unfair and deceptive practices as defined in the Pennsylvania UTPCPL.

---

[62] 73 PA. CONS. STAT. §§ 201-1 and 201-2 (2018).

388.     The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies expended for Subsys prescriptions that they would not have paid but for Insys's conduct.

389.     Pursuant to 73 Pa. Cons. Stat. § 201-9.2, Plaintiffs, on behalf of themselves and Class members, seek trebled actual damages or $100, whichever is greater, reasonable costs and attorney fees, and additional relief as deemed necessary or proper by the Court.

**COUNT THIRTY-THREE:**
**VIOLATION OF RHODE ISLAND UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT ("RHODE ISLAND UTPCPA"), R.I. GEN. LAWS § 6-13.1, *ET SEQ.***

390.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

391.     This claim is brought by Plaintiffs pursuant to the Rhode Island UTPCPA, R.I. Gen. Laws. § 6-13.1, *et seq.*

392.     Under R.I. Gen. Laws. § 6-13.1-2, "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are declared unlawful."[63] R.I. Gen. Laws. § 6-13.1-1 specifically proscribes the following: "(ii) [c]ausing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;" "(iii) [c]ausing likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;" "(v) [r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;" "(ix) [a]dvertising goods or services with intent not to sell

---

[63] R.I. GEN. LAWS. § 6-13.1-2 (2018).

them as advertised;" and "(xiii) [e]ngaging in any act or practice that is unfair or deceptive to the consumer."[64]

393.    Plaintiffs, Class members, and Defendants are "person[s]" as defined in R.I. Gen. Laws. § 6-13.1-1(3).

394.    The Defendants' acts or practices as set forth herein occurred in the conduct of "trade" and "commerce" under R.I. Gen. Laws. § 6-13.1-1(5).

395.    Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys prescriptions. These and other actions constitute unfair methods of competition and unfair and deceptive practices as defined in the Rhode Island UTPCPA.

396.    The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies expended for Subsys prescriptions that they would not have paid but for Insys's conduct.

397.    Plaintiffs, on behalf of themselves and Class members, seek actual damages or $200, whichever is greater; punitive damages; reasonable costs and attorney fees; and additional relief as deemed necessary or proper by the Court pursuant to R.I. Gen. Laws. § 6-13.1-5.2.

---

[64] R.I. GEN. LAWS. § 6-13.1-1 (2018).

**COUNT THIRTY-FOUR:**
**VIOLATION OF SOUTH DAKOTA DECEPTIVE TRADE PRACTICES AND**
**CONSUMER PROTECTION LAW ("SOUTH DAKOTA DTPCPL"), S.D. CODIFIED**
**LAWS § 37-24-1, *ET SEQ.***

398.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

399.    This claim is brought by Plaintiffs pursuant to the South Dakota DTPCPL, S.D. Codified Laws § 37-24-1, *et seq.*

400.    Under the S.D. Codified Laws § 37-24-6, the following constitute "deceptive act[s] or practice[s]:" "(1) [k]nowingly act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby."[65]

401.    Plaintiffs, Class members, and Defendants are "person[s]" as defined in S.D. Codified Laws § 37-24-1(8).

402.    Defendants engaged in "trade" and "commerce" as defined in S.D. Codified Laws § 37-24-1(13).

403.    Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent

---

[65] S.D. CODIFIED LAWS § 37-24-6 (2018).

scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys prescriptions. These and other actions constitute deceptive trade acts and practices as defined in the South Dakota DTPCPL.

404.     The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies expended for Subsys prescriptions that they would not have paid but for Insys's conduct.

405.     Under S.D. Codified Laws § 37-24-31, Plaintiffs are entitled to recovery of their actual damages as a result of the Defendants' acts and practices.

## COUNT THIRTY-FIVE:
## VIOLATION OF VIRGINIA CONSUMER PROTECTION ACT ("VIRGINIA CPA"), VA. CODE ANN. § 59.1-196, *ET SEQ.*

406.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

407.     This claim is brought by Plaintiffs pursuant to the Virginia CPA, Va. Code Ann. § 59.1-196, *et seq.*

408.     The Virginia CPA prohibits "fraudulent acts or practices" including, but not limited to "(2) [m]isrepresenting the source, sponsorship, approval, or certification of goods or services;" "(3) [m]isrepresenting the affiliation, connection, or association of the supplier, or of the goods or services, with another;" "(8) [a]dvertising goods or services with intent not to sell them as advertised, or with intent not to sell at the price or upon the terms advertised;" and "(14) [u]sing any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction."[66]

---

[66] VA. CODE ANN. § 59.1-200(A) (West 2018).

409.     Plaintiffs, Class members, and Defendants are "person[s]" as defined in Va. Code Ann. § 59.1-198.

410.     The Defendants' acts or practices as set forth herein *occurred* in connection with a "consumer transaction" under Va. Code Ann. § 59.1-198.

411.     Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys prescriptions. These and other actions constitute fraudulent acts and practices in violation of the Virginia CPA and caused financial losses to Plaintiffs and Class members.

412.     The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies expended for Subsys prescriptions that they would not have paid but for Insys's conduct.

413.     Defendants are liable to Plaintiffs and Class members for damages, including three times Plaintiffs' and Class members' actual damages or $1,000, whichever is greater, due to Defendants' willful actions; reasonable attorneys' fees and Court costs; and any other relief the Court deems proper.

**COUNT THIRTY-SIX:**
**VIOLATION OF WASHINGTON CONSUMER PROTECTION ACT ("WASHINGTON CPA"), WASH. REV. CODE § 19.86.010, *ET SEQ.***

414.   Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

415.   This claim is brought by Plaintiffs pursuant to the Washington CPA, Wash. Rev. Code § 19.86.010, *et seq.*

416.   Wash. Rev. Code § 19.86.020 broadly declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."[67]

417.   Plaintiffs, Class members, and Defendants are "person[s]" as defined in Wash Rev. Code § 19.86.010.

418.   Defendants committed the acts complained of herein in the course of "trade" and "commerce" within the meaning of Wash. Rev. Code. § 19.86.010.

419.   Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys prescriptions. These and other actions constitute violations of the Washington CPA and caused financial losses to Plaintiffs and Class members.

420.   The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of,

---

[67] WASH. REV. CODE ANN. § 19.86.020 (West 2018).

*inter alia*, monies expended for Subsys prescriptions that they would not have paid but for Insys's conduct.

421.    Defendants are liable to Plaintiffs for damages in amounts to be proven at trial, including attorneys' fees, costs, and treble damages, as well as any other remedies the Court may deem appropriate under Wash. Rev. Code. § 19.86.090.

## COUNT THIRTY-SEVEN:
## VIOLATION OF WEST VIRGINIA CONSUMER CREDIT AND PROTECTION ACT, ("WEST VIRGINIA CCPA"), W. VA. CODE § 46A-1-101, *ET SEQ.*

422.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

423.    This claim is brought by Plaintiffs pursuant to the West Virginia CCPA, W. Va. Code § 46A-1-101, *et seq.*

424.    W. Va. Code § 46A-1-104 prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce."[68] Without limitation, "unfair or deceptive" acts or practices include "(7) . . . (B) [c]ausing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services;" "(C) [c]ausing likelihood of confusion or of misunderstanding as to affiliation, connection or association with or certification by another;" "(E) [r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;" "(I) [a]dvertising goods or services with intent not to sell them as advertised;" "(L) [e]ngaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding;" and "(M) [t]he act, use or employment by any person of any deception, fraud, false pretense, false promise

_____

[68] W. VA. CODE ANN. § 46A-6-104 (West 2018).

or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby."[69]

425.    All parties are "person[s]" pursuant to W. Va. Code § 46A-6-102(2).

426.    Defendants engaged in trade "trade" and "commerce" as defined in W. Va. Code § 46A-6-102(6).

427.    Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys prescriptions. These and other actions constituted unfair and deceptive practices based on the definitional section of the West Virginia CPPA.

428.    Defendants' scheme caused damages to Plaintiffs and Class members that would not have occurred had the Defendants not colluded with doctors to purposefully deceive Plaintiffs and Class members.

429.    The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of,

---

[69] W. VA. CODE ANN. § 46A-6-102(7) (West 2018).

*inter alia*, monies expended for Subsys prescriptions that they would not have paid but for Insys's conduct.

430.     Pursuant to W. Va. Code § 46A-6-106, Plaintiffs, on behalf of themselves and Class members, seek monetary relief against the defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $200 per violation of the West Virginia CCPA for each plaintiff.

431.     Plaintiffs, on behalf of themselves and Class members, also seek punitive damages against Defendants because they carried out despicable conduct with willful and conscious disregard of the rights of others, subjecting Plaintiffs to cruel and unjust hardship as a result.

432.     Plaintiffs are sending demand letters notifying Defendants of such claims for relief pursuant to W. Va. § 46A-6-106(c) and will amend this complaint following such notice.

## COUNT THIRTY-EIGHT:
## VIOLATION OF WISCONSIN DECEPTIVE TRADE PRACTICES ACT ("WISCONSIN DTPA"), WIS. STAT § 100.18

433.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

434.     This claim is brought by Plaintiffs pursuant to the Wisconsin DTPA, Wis. Stat. §100.18.

435.     Wis. Stat. §100.18(1) broadly prohibits a "representation or statement of fact which is untrue, deceptive or misleading."[70]

436.     Plaintiffs, Class members, and Defendants are "person[s], firm[s], corporation[s], or association[s]" for purposes of Wis. Stat. § 100.18(1).

---

[70] WIS. STAT. ANN. § 100.18(1) (West 2018).

437.    Plaintiffs and Class members are members of "the public" within the meaning of Wis. Stat. § 100.18(1).

438.    Insys encouraged its sales representatives to promote off-label use of Subsys by targeting known high-volume opioid prescribers and doctors who treat patients with chronic pain to prescribe Subsys for uses beyond "breakthrough cancer pain," the sole purpose for which the drug was approved by the FDA; provided benefits and kickbacks to doctors via sham Speaker Programs to induce them to write unnecessary and/or off-label prescriptions of Subsys; and established and used the Insys Reimbursement Center to help carry out Defendants' fraudulent scheme and deceive Plaintiffs and Class members into authorizing payments for Subsys prescriptions. These and other actions display a scheme to fraudulently represent that patients had a legitimate need for Subsys in order to seek reimbursement payments from Plaintiffs and Class members.

439.    The foregoing acts, omissions and practices directly, foreseeably and proximately caused Plaintiffs and other members of the Class to suffer an ascertainable loss in the form of, *inter alia*, monies expended for Subsys prescriptions that they would not have paid but for Insys's conduct.

440.    Plaintiffs and Class members are entitled to damages and other relief provided for under Wis. Stat. § 100.18(11)(b)(2). Because Defendants' conduct was committed knowingly and/or intentionally, Plaintiffs are entitled to treble damages.

441.    Plaintiffs also seek Court costs and attorneys' fees under Wis. Stat. § 110.18(11)(b)(2).

**COUNT THIRTY-NINE:**
**UNJUST ENRICHMENT**
**(All States including District of Columbia, Except Ohio and Indiana)**

442.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

443.     To the extent required, this claim is pleaded in the alternative to the other claims in this Complaint.

444.     Defendants have unlawfully benefited from their sales of Subsys prescriptions because of the unlawful and inequitable acts alleged in this Complaint. Defendants unlawfully charged TPPs, which made purchases of or reimbursements for Subsys prescriptions they would not have purchased or reimbursed but for Defendants' unlawful conduct.

445.     Defendants financial benefits resulting from their unlawful and inequitable acts are traceable to overpayments by Plaintiffs and members of the Class.

446.     Plaintiffs and members of the Class have conferred a direct benefit upon Defendants in the form of significant payments of benefits based on claims and charges for Subsys prescriptions to the economic detriment of Plaintiffs and the Class.

447.     Defendants have been enriched by revenue resulting from Subsys prescriptions while Plaintiffs have been impoverished by the payments made for Subsys prescriptions imposed through Defendants' unlawful conduct. Defendants' enrichment and Plaintiffs' impoverishment are connected.

448.     There is no justification for Defendants' retention of, and enrichment from, the benefits they received, which caused impoverishment to Plaintiffs and the Class, because Plaintiffs and the Class paid for Subsys prescriptions that inured to Defendants' benefit, and it would be inequitable for Defendants to retain any revenue gained from their unlawful charges.

449.     Plaintiffs did not interfere with Defendants' affairs in any manner that conferred these benefits upon Defendants.

450.     The benefits conferred upon Defendants were not gratuitous, in that they constituted revenue created by unlawful charges arising from Defendants' illegal and unfair actions to charge for non-reimbursable Subsys prescriptions.

451.     It would be futile for Plaintiffs and the Class to seek a remedy from any party with whom they have privity of contract. Defendants have paid no consideration to any other person for any of the unlawful benefits they received indirectly from Plaintiffs and the Class with respect to Defendants' sales of Subsys.

452.     It would be futile for Plaintiffs and the Class to seek to exhaust any remedy against the immediate intermediary in the chain of distribution from which they indirectly purchased Subsys, as the intermediaries are not liable and cannot reasonably be expected to compensate Plaintiffs and the Class for Defendants' unlawful conduct.

453.     The economic benefit of charges derived by Defendants through charging for Subsys prescriptions is a direct and proximate result of Defendants' unlawful practices.

454.     The financial benefits derived by Defendants rightfully belong to Plaintiffs and the Class, because Plaintiffs and the Class paid for Subsys prescriptions during the Class Period, inuring to the benefit of Defendants.

455.     It would be inequitable under unjust enrichment principles under the law of the District of Columbia and the laws of all states of the United States, except Ohio and Indiana, for Defendants to be permitted to retain any of the charges for Subsys prescriptions derived from Defendants' unlawful, unfair, and/or unconscionable methods, acts, and trade practices alleged in this Complaint.

456.     Defendants are aware of and appreciate the benefits bestowed upon them by Plaintiffs and the Class. Defendants consciously accepted the benefits.

457.    Defendants should be compelled to disgorge in a common fund for the benefit of Plaintiffs and the Class all unlawful or inequitable proceeds they received from their sales of Subsys prescriptions.

458.    A constructive trust should be imposed upon all unlawful or inequitable sums received by Defendants traceable to indirect purchases of Subsys prescriptions by Plaintiffs and the Class. Plaintiffs and the Class have no adequate remedy at law.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs BCBSLA and HMO Louisiana, Inc., individually and on behalf of the Class described herein, respectfully pray for the following relief:

A. Certification of this action as a class action, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), appointment of Plaintiffs as representatives of the Class, and appointment of Plaintiffs' counsel as Class Counsel;

B. Entry of joint and several judgments against Defendants in favor of Plaintiffs and the Class;

C. A finding that Defendants' wrongful conduct alleged herein violated RICO, common law civil conspiracy and the consumer fraud and protection statutes and deceptive trade practices statutes set forth above, and an award for all measures of damages allowable under such statutes, in an amount to be determined at trial, plus costs of suit, including reasonable attorneys' fees and litigation expenses;

D. Granting to Plaintiffs and the Class equitable relief in the nature of disgorgement, restitution, and the creation of a constructive trust to remedy Defendants' unjust enrichment;

E. Granting to Plaintiffs and the Class an award for damages and, where applicable, treble, multiple, punitive, and/or other damages, in a such amount to be determined at trial and as provided by applicable law;

F. Granting to Plaintiffs and the Class pre-judgment and post-judgment interest on all damages;

G. Granting to Plaintiffs and the Class costs of suit, including reasonable attorneys' fees and litigation expenses as provided by law; and

H. Granting to Plaintiffs and the Class all such other and further relief as necessary to correct Defendants' unlawful conduct, and as the Court deems just and proper under the circumstances.

## IX.    JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs respectfully request a trial by jury on all issues so triable.

Dated: December 10, 2018                          Respectfully submitted,

                                                  */s/ Lauren G. Barnes*_____
                                                  Thomas M. Sobol
                                                  Lauren Guth Barnes
                                                  **HAGENS BERMAN SOBOL SHAPIRO LLP**
                                                  55 Cambridge Parkway, Suite 301
                                                  Cambridge, MA 02142
                                                  Tel: (617) 482-3700
                                                  Fax: (617) 482-3003
                                                  tom@hbsslaw.com
                                                  lauren@hbsslaw.com

                                                  James R. Dugan, II
                                                  David S. Scalia
                                                  Doug Plymale
                                                  Bonnie Kendrick
                                                  **THE DUGAN LAW FIRM, LLC**
                                                  One Canal Place – Suite 1000
                                                  365 Canal Street
                                                  New Orleans, LA70130
                                                  Tel: 504-648-0180
                                                  Fax: 866-328-7670
                                                  jdugan@dugan-lawfirm.com
                                                  dscalia@dugan-lawfirm.com
                                                  dplymale@dugan-lawfirm.com
                                                  bonnie@dugan-lawfirm.com

                                                  Jayne Goldstein
                                                  **SHEPHERD FINKELMAN MILLER &
                                                  SHAH LLP**
                                                  1625 N. Commerce Parkway, Suite 320
                                                  Ft. Lauderdale, FL 33326
                                                  Tel: (954) 515-0123
                                                  Fax: 866-300-7367
                                                  jgoldstein@sfmslaw.com

                                                  James Shah
                                                  Natalie Finkelman Bennett
                                                  **SHEPHERD FINKELMAN MILLER &
                                                  SHAH LLP**
                                                  35 E. State Street
                                                  Media, PA 19063

Tel: (610) 891-9880
Fax: (866) 300-7367
jshah@sfmslaw.com
nfinkelman@sfmslaw.com

***Attorneys for Plaintiffs and the Proposed Class***

Allison N. Pham
Jessica W. Chapman
Charles A. O'Brien
**LOUISIANA HEALTH SERVICE &
INDEMNITY COMPANY D/B/A BLUE
CROSS AND BLUE SHIELD OF
LOUISIANA**
5525 Reitz Avenue (70809)
P.O. Box 98029
Baton Rouge, Louisiana
70898-9029
Tel.: (225) 295-2199
Fax: (225) 297-2760
Allison.Pham@bcbsla.com
Jessica.Chapman@bcblsa.com
Andy.O'Brien@bcbsla.com

***Attorneys for Louisiana Health Service &
Indemnity Company d/b/a Blue Cross and
Blue Shield of Louisiana and HMO
Louisiana, Inc.***